### SCALING v. SUTTON et al.

### No. 14455.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 27, 1942.

Rehearing Denied Jan. 8, 1943.

McGown, McGown, Godfrey & Logan, of Fort Worth, for appellant.

Cantey, Hanger, McMahon, McKnight & Johnson and F. T. Denny, all of Fort Worth, for appellees.

SPEER, Justice.

This is an appeal by Charles W. Scaling alone, from an adverse judgment entered upon an instructed verdict in a cause in which Arnold Sutton and others sought permanent injunctive relief against Scaling and his lessee, restraining them from erecting a structure on a lot within an addition to the City of Fort Worth, Texas, which addition and all lots therein were alleged to be restricted to buildings for use only as private residences and all necessary outbuildings in connection therewith. We shall refer to Sutton et al. as plaintiffs, and to Scaling as defendant. There is no controversy about the pleadings and they need not be detailed.

In 1919, F. M. Hammond, the then owner, platted and filed for record a dedication of an addition to Fort Worth, Texas, designated as Hi-Mount. Subsequently, the whole addition was sold to a corporation, Clover Land Co., and that company refiled the plat and dedicated the property in the name of Crestmont Addition. There are three streets, each 60 feet wide, extending north and south through the entire addition. They are, Clover Lane, Washington Terrace and Thomas Place. There are four blocks in the addition, numbered one to

four, and all lots are 100 feet wide, facing on one of the named streets. All lots in block No. 1 and half the lots in block No. 2 face or front on Clover Lane. The lots of Scaling, about which this controversy arose, face on Clover Lane. One of Scaling's lots, No. 13, is the most southern one in that tier in block No. 2, and part of its most southern line touches Camp Bowie Boulevard.

After Clover Land Co., by its declaration filed for record, changed the name of the Addition from Hi-Mount to Crestmont, Clover Land Co. caused to be filed for record on June 4, 1923, an "Agreement as to Restrictions", affecting all lots facing on Washington Terrace, and on June 12, 1923, filed a second declaration as to restrictions on lots facing on Thomas Place. The restrictions concerning lots on the two named streets were in some respects slightly different from each other, as well also to those imposed on lots on Clover Lane, yet all had in common some of the material provisions which we consider controlling here, such as, (1) no building shall be erected on any lot except a private dwelling house, with necessary out-buildings; (2) no old house could be moved onto any lot; and (3) prohibiting the erection of barns, garages, etc., anywhere except on the back line of the respective lots.

It was stipulated upon the trial that in all conveyances by Clover Land Co. to purchasers of lots facing on Clover Lane (which includes defendant Scaling's lots) the following restrictions were made: "In order to secure the erection of private residence buildings of a good grade, insure uniformity and harmony in the character of such buildings, and maintain the suitableness of the neighborhood for residential purposes and to carry out a general plan for the protection, benefit, use and convenience of each and every purchaser of a lot or lots in said Crestmont Addition, and his heirs and assigns, this deed is made upon the following express conditions, the violation of any one of which by the grantee herein named, or by his heirs or assigns, shall give the right to said Clover Land Company to re-enter upon said premises, re-possess itself thereof and terminate all of the rights of said Grantee herein.

"1. That no building shall be erected on said premises except a private dwelling house and outbuildings thereof.

"2. That no old house shall ever be erected or placed on said lot."

No. 3 is in effect that no purchaser, his heirs or assigns, should ever sell, transfer or assign any lot to a negro.

"4. That no dwelling shall be erected upon said lot that shall cost less than $6,000.00.

"5. That no more than one dwelling shall be erected upon this lot."

No. 6 provides that the front wall of all dwellings shall be 30 feet from the front line of the street on which it fronts.

No. 7 is to the effect that outhouses shall be on the back line of the lot or within 25 feet of the rear line.

"8. That no dwelling shall be erected upon said lot, except one (of) brick, veneer or stucco over tile, and no frame dwelling shall ever be erected on said lot."

The warranty clause in said conveyances is the usual and customary form, with the exceptions referable to 1923 taxes and the vendor's lien set out in the deed, with this further provision: "* * * so long as the said Grantee and his heirs and assigns shall comply with the conditions hereinbefore set out; and all said conditions being covenants which shall run with the land hereby conveyed."

It was further stipulated that while the deeds to lots facing on Washington Terrace and Thomas Place did not contain the first above quoted paragraph, beginning with the words, "In order to secure the erection of private residence buildings", etc., conveyances of lots on Washington Terrace were made subject to the restrictions and conditions set out in the "Agreement" dated June 4, 1923, recorded in a given volume and page, referred to above by us, and lots on Thomas Place were conveyed expressly subject to the restrictions set out in the instrument filed by Clover Land Co. on June 12, 1923, also referred to above. Both of those instruments are in the record. Those two instruments vary in some particulars; but we do not consider that such variances affect the result of this appeal. The conveyances to lots on Clover Lane and those on Washington Terrace and Thomas Place, as well as the instruments called "Agreements", referable to lots on Washington Terrace and Thomas Place, have many things in common, especially with reference to the inhibition of the erection of any building on any lot other than a private dwelling and necessary outbuildings. All of which, to our minds, present beyond question an in-

tention by grantor and purchasers (by the acceptance of such conveyances) to restrict the area of about twenty acres, by a general plan and scheme, to a strictly residential district. The principal difference in the restrictions placed on lots located on the three named streets did not destroy the general plan and scheme intended by the parties.

Some of the different conditions imposed by the conveyances were that the minimum cost of dwellings to be placed on lots facing Clover Lane was $6,000, while on Washington Terrace and Thomas Place the minimum values were named as $12,000. Also in connection with the provision in deeds to Clover Lane property relating to placing old houses on the lot, saloons were prohibited, and the material out of which a dwelling was to be constructed was not mentioned; referable to property facing on Thomas Place, all dwellings were required to be two stories high.

At the conclusion of taking testimony, the trial court instructed the jury to return a verdict for plaintiffs. Judgment was entered on the verdict. Motion for new trial by defendant Charles W. Scaling was overruled and he has appealed.

There are three points presented for reversal. They are, (1) the Court erred in construing the deed as covenants and not as conditions subsequent; (2) the Court erred in holding that appellees (plaintiffs and interveners) could maintain an action based on the conditions subsequent in the deed, though said appellees were not grantors or grantors' heirs; and (3) since there was evidence showing changed circumstances, conditions and surroundings rendering the property unsuitable for residential purposes, the court should have submitted an issue on these facts to the jury.

Points one and two are such that a disposition of the first will dispose of the second. This is true for the reason that if the conditions above referred to were not conditions subsequent, but were restrictive covenants going with the land, no error would be presented in the second point. It was unquestionably the duty of the trial court to construe the deeds of conveyance, giving to them the effect in law to which they were entitled. This, we think, he did. The effect of such construction was that the conditions were restrictive covenants and not conditions subsequent. The restriction which made each of the lots on Clover Lane one only for the erection of a dwelling house and its necessary outbuildings, also provides that it was intended to be for "the protection, benefit and convenience of each and every purchaser of a lot or lots in said Crestmont Addition", and that all of said conditions being covenants which shall run with the land.

It is contended by defendant that because of the language used and especially that part which reserved to the grantor the right to re-enter and re-possess the lots if grantees should violate any one of the conditions therein named, amounted to a condition subsequent and was enforceable only by grantor or some one holding that right under it. He relies upon such cases as Rosek v. Kotzur, Tex.Civ.App., 267 S.W. 759, which in effect holds that a covenant is a promise upon which a conveyance is executed, and a breach gives grantor a right of action for damages, but does not give the right of forfeiture, while a condition subsequent is one which, when violated, will give the grantor the right of reinvesting himself with full title. Also Goodman v. Bingle, Tex.Civ.App., 48 S.W.2d 432, which construed provisions in a deed to be conditions subsequent. The distinction between the facts in that case and the one before us may be discovered by a careful reading of the opinion. There, an owner sold lots to many purchasers, among whom were the remote predecessors in title of Bingle and Goodman. The deeds from grantor were executed about 18 years previous and provided that a violation of certain named conditions should cause the title to revert to grantor. No other deed in the chain of title of either party contained such provisions, and shortly after the deeds were made, grantor conveyed all of its right in reversion to another, who in turn promptly filed a written release of all such rights. Bingle applied for an injunction to restrain Goodman from violating the conditions in the deed. The court observed that the restrictions were by apt words made to relate to grantor alone, and it being released, Bingle was not entitled to the relief sought. Differing with conditions before us, the court in the cited case found substantially that the restrictions contained in the original conveyance did not purport to run in favor of other owners of lots in the area; that the record did not indicate that a general plan or scheme had been set up for restricting all lots in the vicinity, as were those of the litigating parties. The rule was announced that whether one who was not a party to the restric-

tive covenant has the right to enforce it depends upon the intention of the party imposing it. This intention is to be ascertained from the language used construed in connection with the circumstances existing at the time the deed was executed. Citing Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270, and Curlee v. Walker, 112 Tex. 40, 244 S.W. 497.

■ What we believe to be the controlling case on the point here involved is that of Hooper v. Lottman, supra. In that case an improvement corporation subdivided an area and designated it as an Addition to the City of Houston. It sold all of its holdings and went out of business. In all conveyances made by it except, perhaps, two, a provision (among others) was inserted to the effect that no barn should be erected on any lot closer than 60 feet to any street. The defendant was in the act of erecting a barn, in violation of that provision, and plaintiffs, who owned property in the addition, sought to restrain him from building the barn. Plaintiffs were denied relief in the trial court, and that judgment was reversed. In the opinion several principles were announced, which are applicable to the instant case. They were, in effect, all parties interested in a restrictive covenant may enforce it; whether or not they are parties to the restrictions depends upon the intention of grantors and those who hold under them; this intention is to be determined from the language used construed in connection with the circumstances surrounding the execution of the instrument; that if the observance of the restrictions imposed is calculated to enhance the value of the lots sold it is an easy inference that the vendor intended the restrictions for the benefit of all the lots; that the most frequent, instances in which this inference will be indulged is where a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of restrictions to be imposed on each of the separate lots sold. That such an agreement enters into each sale and becomes a part of the consideration, it thereby becomes mutual between the seller and each purchaser. Such agreements become enforceable by purchasers as well as by the original seller. There is a further discussion found in the opinion applicable here. In that case there was a variance in some conveyances as to the distance a barn should be built from the street line. It was there contended that such differences destroyed the theory that a general plan of development had been formed; but it was held that there may be a departure from the usual restrictions without destroying the integrity of the scheme of development as a whole.

■ While the last cited case was by the Court of Civil Appeals, yet it was definitely approved by the Supreme Court in the Curlee v. Walker case, supra, 112 Tex. 40, 244 S.W. 497. The opinion by the Supreme Court discloses that the conveyances contained a very similar provision to the one before us. Likewise there was a provision for forfeiture of the title to the original grantor if any of the restrictive provisions were violated. The opinion recognizes the right of developers to place restrictions in their deeds and bind the purchasers to an observance thereof, and that the right to enforce those restrictions inures to the benefit of other purchasers under similar restrictions.

We observe that by reference to Sheppard's Citator, the two cited cases have been consistently followed by the courts of this state. See Klein v. Palmer, Tex.Civ.App., 151 S.W.2d 652, where the authorities are collated. Bethea v. Lockhart, Tex.Civ. App., 127 S.W.2d 1029, writ refused, is directly in point.

The evidence in this case conclusively shows that the restrictions placed on the property were urged as an attraction for purchasers and that they tend to make lots bring better prices and that experience teaches dealers and purchasers they have that effect. It further appears from the evidence that while the restrictions placed on lots facing on Clover Lane provided that only one house could be built on a single lot, yet after two lots had been sold the owner decided that on that particular street the restriction, in that respect, was impracticable and repurchased one of the lots sold under that restriction and procured the consent of the other owner to change the restriction so that a dwelling could be placed on half lots.

■ It is obvious from this record that the owners of the 20 acre tract formulated and put into execution a general plan and scheme to restrict it to a place for private dwelling only; that all restrictions placed in conveyances were restrictive covenants running with the land; that the restrictions were mutual between seller and buyer and

constituted a part of the consideration in each sale and that in this way each purchaser was a party thereto and could, in his own name, enforce them against other persons holding under similar conveyances. We also conclude that the varying restrictions on property facing on the different streets, under the circumstances involved and the modification of restrictions on the Clover Lane property relating to one dwelling on a 100 foot lot, did not destroy nor abrogate the original general plan and scheme to restrict the area to residential property. For these reasons first and second points are overruled.

By third point, defendant urges that because conditions arising since the purported dedication of the addition and the sale of lots under the named restrictions had so changed as to render the property involved unsuited for residential purposes, they were no longer enforceable. On this question, apparently, each decided case has to a great extent been decided, upon equitable grounds. We think the weight of authorities, as well as the equitable rights of adjacent property owners, are against defendant's contention. Defendant relies upon holdings in Ragland v. Overton, Tex.Civ.App., 44 S.W.2d 768, and Abernathy v. Adoue, Tex.Civ.App., 49 S.W.2d 476. There are expressions found in the Ragland-Overton case, supra, which apparently support the contention of defendant here, but a careful study of the facts involved discloses that in the very district numerous restrictions had been violated and acquiesced in by those who later sought to enforce the same restrictions against another. It was further shown in that case that the restrictions did not bind the grantee's assigns and that there were as many as 33 conveyances of lots in the area which did not contain the restrictions. That the restrictions were sufficient to entitle the grantor to enforce their provisions by the application of the rule of liberal construction in favor of the owner of property, the equitable relief sought by complainants was not justified.

In the Abernathy-Adoue case, supra, it was held that changed conditions in a neighborhood brought about by agencies outside of the involved parties may terminate building restrictions for residential purposes, but that changed conditions which affect only the property owned by the party seeking to have building restrictions cancelled will not entitle him to a cancellation where it would injure other restricted property owners.

■ This record discloses that at the time Crestmont Addition was laid out, much of the property across Camp Bowie Boulevard was owned by the same parties, and that the whole acreage was cut up into different additions; that the property across Camp Bowie Boulevard was so platted and sold that the business district in that whole area would be confined to that side of the Boulevard which is immediately south of and across the Boulevard from Crestmont Addition; that the business district had been built up on that side of the Boulevard since the lots in Crestmont Addition were originally sold; that Camp Bowie Boulevard is approximately 125 feet wide and in recent years has become a main traffic artery entering the city from the west, and that the heavy traffic and the location of the business district on the south side have rendered defendant's lot unsuitable for residential purposes, but have made it very valuable as business property. This condition existed when defendant purchased his lot in 1940.

■ We think the rule that should prevail in such cases as the one before us is announced in Bethea v. Lockhart, Tex.Civ. App., 127 S.W.2d 1029, writ refused. That case has the sanction of the Supreme Court. There it appears that a party holding a lot under restrictions similar to those before us, sought to violate those restrictions because of alleged changed conditions in the district, and owners of nearby property in the restricted area sought equitable injunctive relief to prevent him from such violation. Complainants prevailed and the judgment was affirmed. It was there contended, as is done in this case, that the changed condition affected only the property owned by the defendant; but the court reasoned, should the court in such cases consider only the property so affected by the changed conditions or should consideration be given to the entire area covered by the restrictions? Court concluded that if to permit the defendant in that case to violate the restrictive provisions, other owners whose property was under similar restrictions would thereby be affected, defendant should not be permitted to violate such conditions contained in his deed of conveyance. It occurs to us that if changed conditions outside of a restricted area become such as to make certain property in the restricted area less valuable for the purposes and uses for which it was sold, no good reason exists for the violation of

those restrictions, if to do so other property owners in the restricted district would be forced to suffer damages to their property. Certainly the property immediately adjacent to that upon which the restrictions were violated would suffer first and perhaps most. In such circumstances the adjacent owner could with propriety likewise violate the restrictions, then the one next to him would in equity have an equal right; and so on throughout the whole addition. By such process of reasoning the entire purpose and intention originally expressed to create a restricted residential district could be thwarted and all property owners who did not desire to accept the changed situation and convert their homes into business property would be penalized without fault on their part. It is our belief that equity in such a situation is with the property owners who desire that their home district be confined to its original purpose, and not with one who seeks to violate those conditions because he chanced to own the particular piece of property which was most affected by changed conditions. For the reasons stated, we overrule the third point and its related assignment of error.

No reversible error being presented by this appeal, we conclude that the judgment of the trial court should be affirmed. It is our order that this be done.