FAUBIAN et al. v. BUSCH et al.

No. 6140.

Court of Civil Appeals of Texas.
Amarillo.

March 12, 1951.

Rehearing Denied April 9, 1951.

Hazlewood & Richards, Amarillo, for appellants.

Monning & Monning, Amarillo, for appellees.

PITTS, Chief Justice.

This suit was filed by appellees, Dan Busch, Fred Bush, Jr., Jack A. Spence and wife Ola M. Spence, against appellants, William C. Faubian and 36 other named defendants as property owners in the Palo Duro Addition to the City of Amarillo, Randall County, Texas. The suit is in the nature of a class action filed by appellees against the 37 named defendants individually and as representatives of all other persons, firms and corporations owning lots in the said Addition. Appellees are seeking a final judgment declaring the recorded building restrictions of no force and effect in so far as they apply to lots numbers 1 and 2 in Block No. 8 of the said Addition, owned by appellees Busch Brothers, who for some reason spell their last names differently, and lots numbers 12 and 13 in Block No. 1 of the said Addition, owned by appellees Jack A. Spence and wife Ola M. Spence, and for an order enjoining perpetually all named defendants and all others so situated from interfering with appellees' use of the said lots for business purposes. All named defendants answered with a general denial and alleged that all of the lots in the said Addition were restricted for residential purposes only and sought in a cross action to enjoin appellees from further violation of the restrictions.

The case was tried to a jury and as a result of the verdict judgment was rendered for appellees setting aside the restrictions and holding them to be of no force and effect in so far as they applied to appellees' lots in question and enjoining appellants perpetually from interfering with appellees' use of the said lots for business purposes. Appellants have perfected their appeal and have attacked the trial court's judgment on numerous assigned grounds. The record is voluminous, containing a transcript of more than 150 pages and a statement of facts of more than 500 pages.

Appellees pleaded that the Addition is described by a map or plat of the same designated as "John P. Mathis Amended Plat of Palo Duro Addition", which is recorded in Randall County and that the lots are owned by several hundred persons; that the common dedication instrument under which all parties to the suit claim their property is an instrument of dedication executed on January 22, 1926, by John P. Mathis and others and the same is recorded in Volume 44, Pages 280–289, of Randall County deed records and that the same contains certain restrictions set out and pleaded at length by appellees. Among the restrictions pleaded by them is that "None of the lots shown on said amended plat shall be used for other than private residences * * *" and that if any person, while owning any such lots, violates or threatens to violate such restrictions therein contained he shall be halted by injunction under the principles of equity. Appellees further pleaded that approximately 75% of the property owners in the said Addition have relinquished their rights to enforce the restrictions as to appellees' said lots therein. However appellees must not be satisfied with such relinquishments since they sued all of these property owners along with those who had not relinquished any rights. Appellees further pleaded that, because of changed conditions since the dedication and restrictions were made, they are entitled to the relief sought. They further pleaded that the general scheme of development of the Addition had been frustrated; that there had been a general abandonment by all property owners of the restrictive covenants contained in the sale of the lots in the said Addition; and that the general plan or building scheme has been abrogated as to appellees' lots in question. They also pleaded that defendants and class defendants knew or should have known of some restriction violations already existing on appellees' said lots, in which violations said defendants have acquiesced and they have therefore waived any right to complain and are estopped from making such complaints. Appellees have thus pleaded a uniform plan of the Addition as platted and dedicated so as to constitute a "general plan or scheme" as that term is used and recognized in law.

Appellants charge in their first point of error that the trial court erred in overruling their motion for an instructed verdict on the grounds, in effect, that appellees failed to offer sufficient evidence of probative force to raise any material and ultimate fact issues for the jury to pass on.

The evidence reveals that Palo Duro Addition is located within the city limits and in the south part of Amarillo, composed of eight blocks, located between 34th Street on the north and 38th Street on the south and between Washington Street on the east and Lipscomb Street on the west (in that area there is no 35th Street or 37th Street). An east-west paved highway. follows 36th Street across the Addition carrying the traffic on U. S. Highways 60 and 87. There are 256 lots in the Addition and 85% of them have residences built on them and are occupied mostly by young couples with families as their homes. Some of them have been recently built, and others were under construction. There are no business establishments on any of the lots in the said Addition except on lots 12 and 13 in Block 1, located on the north side of and adjacent to the highway on 36th Street, owned and occupied by appellees Jack A. Spence and wife Ola M. Spence. Their business establishments so located consist of a small grocery store, a sandwich stand, an ice vending machine and malt machine all located on the front part of the said lots and operated by the said appellees, and a small egg and feed store located on the back part of the same lots and operated by another fellow. There had been a small business establishment of some sort known as the "Green Dart" selling brooms and mops located on the back part of a lot in the Addition near Jack Spence's place of business but a complaint for such had been previously made against the operator to the city officials by some of the appellants. The city authorities said the operator had no permit to operate and they would stop such operation, but the evidence does not reveal whether or not he was still operating. These were the only business establishments shown by the evidence to exist in the Addition. Other than these and a few trivial violations of the restrictions with reference to infractions of the building code and living conditions in some places, the owners had generally observed the restrictions and insisted that all other owners do so. Spence had begun the improvements on his lots in 1946 and had gradually added thereto. He testified that he had part of his building constructed before he realized about the restrictions. Appellees, Busch Brothers, bought one of their lots across the highway and 36th Street south from Spence's lots in 1946 and the other in 1947. They knew that the lots were restricted as residential property when they bought them, but one of them testified they bought them for business purposes. No improvements had been placed on either of their lots and there has been little change in general conditions affecting the Addition since they bought them, other than a natural growth and development of the Addition. When the Addition was dedicated, U. S. Highway 87 followed 34th Street along the north side of the Addition and has since been moved one block south to 36th Street. A farm-to-market road was being constructed along the east side of the Addition. The record further reveals that 12 of the 37 named defendants testified in the trial court while 25 of them did not testify. Of the 12 who did testify 10 of them testified in substance that they knew about the residential restrictions when they bought homes in the Addition or bought lots there upon which they built homes and that the said restrictions formed a part of the covenant and consideration. They each objected to any lots in the Addition being used for business purposes. Most of them testified that they knew about Spence's improvements but they did not know until after they bought that such improved lots were in the Palo Duro Addition. The record further reveals that 15 property owners in the Addition who were not named as party defendants also gave the same testimony in substance as that given by the 10 named defendants referred to. It is also reflected by the record that during the year 1949 appellees and their agents had gotten many property owners in the Addition, . including appellee, Jack Spence, to sign a

waiver of the restrictions as to appellees' lots being zoned by the City of Amarillo as business lots. (The instrument shows some other names thereon but the court reporter's note in connection therewith shows them to have been printed thereon and not written signatures). However, several such property owners, who were not named as defendants, testified that, although they had signed such a waiver during the previous year, they had changed their minds and did not want the restrictions inserted in the deeds to their property in the said Addition disturbed and were opposed to any of the lots in the said Addition being used for business purposes. It clearly appears that all conveyances of lots in the Addition contain the restrictions here being contested and that all parties to the suit had constructive knowledge if not actual knowledge about such restrictions.

 The rules of law that govern covenants of the character set out in the deeds to the lots in the restricted Palo Duro Addition are well recognized. The covenants have been enforced and the rights of the owners have been upheld by courts of equity where it appears that a general building scheme or plan for the development of a tract of land has been adopted and designed to make it more attractive for residential purposes by reason of certain restrictions imposed on each of the separate lots sold and that such a general scheme or plan still exists. Such a scheme is part of an inducement to each purchaser to buy and it may be assumed that the purchaser paid an enhanced price for the lots purchased, however, some of the purchasers who are appellants in this case testified that they paid enhanced prices for the lots in the Addition because of the restrictions that helped to make up the uniform general scheme or plan. The agreement that helps compose the general scheme or plan therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own lot, if it be a burden, because of the fact that a like burden, if any, imposed upon his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of all purchasers of lots, as was true in the case at bar, are recognized and enforced by courts of equity at the instance of the original grantor or any subsequent purchasers or by any purchaser and his assigns against any other purchaser. Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, in which case the Supreme Court cites with approval the case of Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270; Abernathy v. Adoue, Tex.Civ.App., 49 S.W.2d 476; Braswell v. Woods, Tex.Civ.App. 199 S.W.2d 253, 255, and other numerous authorities there cited. In the case at bar appellees contend that appellants waived their right to complain and abandoned the general scheme or plan. The burden was upon them to raise such issues by evidence of probative force. Under the facts in this case and the holdings of the court in the last case cited, the issues of waiver and abandonment by appellants were not raised by the evidence. The court there held that: "It has been uniformly held by the courts of both this state and of other jurisdictions that, in order to establish a waiver or abandonment of a general scheme or plan of the development of a particular area, it must be shown that such plan has been violated to such an extent as to reasonably lead to the conclusion that it had in fact been abandoned, and that unsubstantial violations thereof or the fact that a complainant had not objected to previous violations of such restrictions, particularly where they did not immediately affect the enjoyment of his own premises, will not prevent him from maintaining an action for injunctive relief to prevent substantial violations thereof, or a violation which would materially affect his own premises."

Numerous authorities are there cited in support of the rules of law enunciated. The court there further held that "trivial and unsubstantial violations of the restrictions" would not support a plea of waiver or abandonment.

"Waiver" is the intentional relinquishment of a known legal right which is at the time available, and a person cannot waive a right before he is in position to assert it. One of the essential elements of a waiver is the existence of an opportunity for a choice between a relinquishment and the enforcement of the right in question. Roberts v. Griffith, Tex.Civ.App., 207 S.W.2d 443; Texas Life Ins. Co. v. Mansel, Tex.Civ.App., 105 S.W.2d 899. In one single issue in the case at bar the trial court inquired if "the defendants" (meaning all of the 37 named defendants plus the "several hundred" others pleaded by appellees) had waived the residential restrictions on Busch's lots and the same kind of an issue was submitted as to Spence's lots; another single issue inquired if "the defendants" had permitted Spence to improve his property; other such issues were submitted to the jury on the question of abandonment, estoppel and if "defendants" had acquiesced in Spence's improvements. As we view the matter, such issues were not raised by the evidence. Assuming that they were raised, they each appear to be multifarious and duplicitous since one general answer to each issue may not have expressed what was in the minds of the jurors as to each defendant. It was appellees' burden to at least raise such issues as to all defendants but, under the rules of law and the evidence heard, no such issues were raised as to all defendants or at least as to a large majority of the defendants. The evidence conclusively showed that 25 defendants who testified had not abandoned the general scheme or plan or waived any complaint about it or were estopped from complaining. They are still insisting upon the enforcement of the restrictions. The record is wholly silent as to all other defendants, except possibly two who were not adverse to a termination of the restrictions on appellees' lots.

Among other authorities cited by appellees, they rely largely upon the case of Ragland v. Overton, Tex.Civ.App., 44 S.W.2d 768, from which it appears no writ of error was applied for. They cite that case many times and quote from it at length. We do not take issue with the rules of law enunciated in that case but it was an entirely different factual situation there when such is compared with the facts in the case at bar. In the Ragland-Overton case, two brothers as property owners in the Overton Addition of Lubbock, Texas, sued Overton as the grantor to remove residential restrictions on two lots they wanted to use for business purposes. In that case it was shown that there were 33 conveyances of lots in the Overton Addition that did not "through oversight" contain restrictions; that about 20 business houses had been established on various lots in the said Addition and some of them were very near Ragland's lots. The business establishments consisted of a tailor shop, a cafe, a Piggly-Wiggly Grocery Store, a tea room, a bottling works, a steam laundry, a shooting gallery, a miniature golf course and other business establishments of various kinds. The record further revealed that some restrictions had been violated and acquiesced in by those who later sought to enforce the same restrictions against another. These developments had occurred after the restrictions had been made and recorded largely because of the establishment of the Texas Technological College, a state school with a large enrollment, located near the Overton Addition and the town of Lubbock had an unusual growth toward the location of the college and numerous businesses had been established in the Overton Addition because of such growth. There had been many changes in conditions in the Overton Addition and numerous businesses had been established in violation of the general plan and scheme. There is much difference between the growth, development and changes made in the Overton Addition after its dedication and that of the Palo Duro Addition where only two or possibly three lots out of 256 lots have some small business establishments on them and the evidence conclusively shows that the growth and development of the Palo Duro Addition otherwise has been no more than a normal growth and development in a busy city.

Appellees also rely on the case of Scanlon v. Dewhurst, Tex.Civ.App., 197 S.W.2d 518. The facts in that case are distinguishable in many ways from the facts in the case at bar.

■■■■■ Appellees contend that the termination of the restrictions would only affect their four lots. Such contentions have been previously made in similar cases but the courts have concluded that such a contention is not logically sound for the reason that lots adjacent to those upon which restrictions had been violated would suffer first and be affected most. Under such circumstances, the adjacent owner could with propriety likewise violate the restrictions, then the one next to him would in equity have an equal right; and so on throughout the whole Addition. By such process of reasoning the entire purpose and intention originally expressed to create a restricted residential district could be thwarted and all property owners who did not desire to accept the changed situation and convert their homes into business property would be penalized without fault on their part. It is our opinion that equity in such a situation is with the property owners who desire that their home district be confined to its original purpose, and that equity is not with one or two or a few who seek to violate those conditions because they happen to own the particular piece of property which was most affected by changed conditions. In considering such matters it has been held that the best interest of the property owners generally within the restricted area should be considered and not the best interest of only one or two or even a few property owners. It has also been held in such cases that changed conditions outside of the restricted area must not be permitted to terminate the restrictions within the restricted area when such would cause property owners within the restricted areas to suffer damages. Bethea v. Lockhart, Tex.Civ.App., 127 S.W.2d 1029, and Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275.

■■■■■ Appellees pleaded and contend that their said lots have been rezoned for business purposes by the City of Amarillo, but it has been held that such restrictions as appellees are here seeking to set aside cannot be abrogated and nullified by a city ordinance such as the City of Amarillo passed to authorize the use of appellees' lots for business purposes. Spencer v. Maverick, Tex.Civ.App., 146 S.W.2d 819, and other authorities there cited.

■■■■■ We recognize the rule of law that authorizes the termination of residential restrictions such as were placed on the use of the property here involved when there have been material changes, other than a breach of the restrictions, made in the restricted area that causes the property no longer to be suitable for residence purposes. But, according to the overwhelming weight of the evidence here presented, such is not true in the case at bar. Here the contrary was conclusively established. The evidence conclusively shows further that appellees, Jack Spence and wife, have violated the building restrictions in question; that the use of the property in question and general plan for building scheme has not been abrogated; and that the use of the property in the Palo Duro Addition has not frustrated the general scheme of the development of the said Addition. On all of these latter three questions, the jury made affirmative findings in answering such issues favorable to appellants, but their findings are not of significance since the evidence conclusively established such facts to be true and the questions therefore become matters of law.

In the case of Plaster v. Stutzman, Tex. Civ.App., 8 S.W.2d 750, 753, and many other cases, some of which have already been herein cited, it has been held that in a case such as this "such restrictions may be enforced by any grantee against any other grantee".

For the reasons stated it is our opinion that appellants' motion for an instructed verdict should have been sustained by the trial court and we must therefore sustain appellants' first point of error. Because of such action, appellants' other points are not material and will not be passed on by us. The judgment of the trial court is therefore reversed and judgment is here rendered dissolving the order of injunction entered by the trial court restraining ap-

pellants from interfering with appellees' use of their lots for business purposes, denying appellees any recovery and granting judgment for appellants on their cross action enjoining appellees from any further violations of the restrictions in question.

Reversed and rendered.