## WOMACK v. DEAN et al.

### No. 6732.

Court of Civil Appeals of Texas.

Texarkana.

April 1, 1954.

Hardy & Clapp, Tyler, for appellant.

Lawrence & Lawrence, F. Lee Lawrence, Tyler, for appellees.

REUBEN A. HALL, Chief Justice.

This action was instituted by appellees and others similarly situated as a class against appellant W. L. Womack in the Dis-

trict Court of Smith County, for an injunction to restrain appellant from "selling any part of said lots 131, 132 and 133 without stipulating in the conveyance thereof that the property was sold subject to the conditions as recited in the deed of said 23.23 acre tract. * * *" Appellees alleged that the land comprising Highland Park Subdivision was dedicated and set apart as a subdivision to the City of Tyler, with certain restrictions, the third restriction being that no dwelling house shall be erected on less than one acre of ground and that the same shall cost not less than $3500.

Trial was to the court without a jury and resulted in judgment for appellees, restraining and enjoining appellant, pending trial of the case on its merits, from selling lots 131, 132 and 133 of the Highland Park Subdivision without restricting the sale thereof to any purchaser by the following restrictions and conditions: "That no dwelling house shall be erected on less than one acre of ground and that same shall cost not less than $3,500.00."

Appellant's point one is: "The court erred in its findings of fact and conclusions of law in finding that at the time of the filing of the lawsuit and of the temporary injunction hearing it was understood by the owners of the land in Highland Park Addition to the City of Tyler, Texas, that a general scheme existed for the building of houses in such addition whereby no dwelling house should be erected on less than one acre of ground, and that the same should cost not less than Three Thousand Five Hundred Dollars ($3,500.00)."

On October 25, 1935, Walter Leonard and wife, Zora Leonard, dedicated and filed for record with the County Clerk of Smith County a map or plat showing a subdivision of 105 acres of land, a part of the James L. Dickey Survey, said plat showing that the land was divided into lots and streets. On June 16, 1936, they executed and delivered to Earl G. Bateman and wife a part of said Highland Park Subdivision out of the Dickey Survey and being a 23.23 acre tract described by metes and bounds, a part

of the 105 acres dedicated by them as Highland Park Subdivision to the City of Tyler. In said deed were three conditions, the third of which reads: "That no dwelling house shall be erected on less than one acre of ground and that same shall cost not less than $3500.00." Appellant's lot is part of the Highland Park Subdivision outside of the 23.23 acre Bateman tract. It is undisputed that in the deed under which appellant holds that there is no restriction as to the size of the lots upon which residences may be built or the minimum price of the residences to be located on them. Fifteen deeds were introduced in the record to different lots in this addition and only three contained the restrictions set out above. However, there is substantial evidence showing it was generally understood that there were such restrictions in the original grant by Leonard and wife, as well as the grant from Leonard and wife to Bateman. There is also evidence in the record that before appellant purchased his lots he had heard of these restrictions. In fact his attorney had received a letter from Mrs. Tyler, stating: "As I remember, there is a building restriction put of record. You might look that up to see if it will fit in with your plans." Womack testified under examination by the court that he was told by appellees that the land in the Highland Park Subdivision was restricted and that he received that information before he purchased the land. Appellee Dean corroborated Womack in this matter and testified further that he had other conversations with Womack about the acre restriction after he had purchased the lots.

It seems from the record above that Womack had actual notice of the restrictions in this subdivision before he bought the lots. Moreover, the record is replete with testimony and circumstances showing that there was a general building scheme or plan for the development of this subdivision by Leonard and wife. The record shows no serious violations of any of the three restrictions. The plan has in no wise been frustrated. Only appellant threatened to subdivide his lots into smaller tracts of less than one acre.

. In the case of Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270, 272, it is said: "The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. * * * *The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions* which contemplate a general building plan for the common benefit of purchasers of lots are recognized *and enforced by courts of equity at the instance of the original* grantor or subsequent purchasers." In the same authority it is also stated: "It is asserted, first, that a general plan of improvement is not shown because the restrictions in some deeds vary as to the distance from streets within which barns and similar buildings may be erected; also that in two instances deeds to lots were made without restrictions. Uniformity in the restrictions imposed on the lots is one of the strongest proofs of the existence of a building scheme. *It is an evidentiary matter only,* however, and any deviation from uniformity, as to restrictions imposed on any of the grantees, is often seized upon, as a defense to an action to enforce the covenant, on the theory that a general plan of improvement is not shown. *There may, however, be departures from the usual restrictions in individual cases without destroying the integrity of the scheme of development as a whole. A want of absolute uniformity for reasons readily apparent does not* militate against the view that the restrictions in the deed were in pursuance of a general scheme for improvement of the property." (Italics ours.) To the same effect is Bethea v. Lockhart, Tex.Civ.App., 127 S.W.2d 1029, writ ref.; Faubian v. Busch, Tex.Civ.App., 240 S.W.2d 361, writ ref., n. r. e.; Braswell

v. Woods, Tex.Civ.App., 199 S.W.2d 253, writ ref., n. r. e.; Scaling v. Sutton, Tex. Civ.App., 167 S.W.2d 275, writ ref., w. o. m.; Klein v. Palmer, Tex.Civ.App., 151 S. W.2d 652; Sayles v. Owens, Tex.Civ.App., 161 S.W.2d 542, writ ref., w. o. m., and authorities there cited.

Appellant's other points attack the findings of the trial court: (a) That the general scheme was corroborated by the understanding of the owners of tracts of land in the addition in question; (b) that irreparable loss and injury would result to the plaintiffs (appellees) as a result of any sale by the defendant (appellant); (c) that the general scheme was corroborated by several deeds containing covenants with such building restrictions; (d) that the appellant had actual notice of the understanding of such property owners in said addition as to any building restrictions; and (e) that the trial court erred in its conclusions of law in issuing a temporary injunction to maintain the status quo of the parties to this lawsuit.

 The above facts and circumstances, in our opinion, furnish sufficient basis for the trial court's finding of fact that a general scheme existed for the building of houses in said addition whereby no dwelling house should be erected on less than one acre of ground and that same should cost not less than $3500, and that appellant had knowledge of such general scheme of improvement by actual notice before he purchased the lots in controversy. The facts developed show a substantial controversy between the parties relating to the general scheme of building houses as respects the Highland Park Subdivision and it became the duty of the trial court to grant the temporary injunction preserving the status quo. Pendleton v. Crabtree, Tex.Civ.App., 214 S.W.2d 675.

Our conclusions expressed above disposes of all other points brought forward by appellant, and they are overruled.

The judgment of the trial court is affirmed.