J. C. DAVIS, et al., Appellants,

v.

CONGREGATION SHEARITH ISRAEL,
Appellee.

No. 14995.

Court of Civil Appeals of Texas. Dallas.

Sept. 23, 1955.

Rehearing Denied Nov. 18, 1955.

·Grady, Johnson, Bell & Lee, Dallas, for appellants.

Henry W. Strasburger, Royal H. Brin, Jr., Charles Marcus, Meyer Ungerman, H. M. Oster, Levi Topletz, Elihu E. Berwald, Max R. Rosenfield, and J. Manuel Hoppenstein, Dallas, for appellee.

DIXON, Chief Justice.

This is a suit for declaratory judgment instituted by appellee Congregation Shearith Israel against 39 defendants as class representatives under Rule 42, Texas Rules of Civil Procedure. The Congregation sought a judgment declaring that its 11.9 acre tract of land is not burdened with deed restrictions that would prevent the erection and use of improvements for church and religious educational purposes. Following a jury trial and a judgment in favor of the Congregation, 12 of the defendants have appealed.[1]

1. This is the second suit involving the question of appellee's right to erect and use proposed improvements on the land in question. In 1950 approximately 140 owners of land both within and without the J. V. Wright 122½ acres, filed a class suit to enjoin appellee from erecting proposed improvements. In that suit the plaintiffs, some of whom are defendant-appellants here, claimed (1) that appellee intended to use the land and a proposed structure for a school not having a curriculum equivalent to a public school in violation of the zoning and building ordinances of the City of Dallas; and (2) that the use of appellee's land was restricted to "private dwelling purposes only," hence its use as either a school or a synagogue would violate existing restrictions. Before this suit came to trial plaintiffs took a nonsuit, but they then notified appellee that they would in the future resist any attempt by appellee to use its property for purposes which the

■ Appellants contend that this type of action cannot properly be brought as a class suit. The basis for this contention is that certain property owners, not made parties to the suit, are necessary and indispensable parties because the court is required to determine whether their property is subject to restrictions.

We believe appellants' contention is based on an erroneous premise. Neither the trial court nor this Court is called on to decide whether property owned by other persons than appellee is subject to restrictions. The only purpose of this suit so far as deed restrictions are concerned is to obtain an adjudication as to whether appellee's 11.9 acre tract of land is subject to restrictions as contended by a designated class of persons.

■ Appellee in appropriate class action pleadings alleges that though none of the deeds in its chain of title contains any restrictions whatever, it is faced with wrongful interference from a class of persons who assert that appellee's property is subject to restrictions (1) by virtue of a general plan and scheme of restrictions adopted by J. V. Wright applicable to all property in his original 122½ acre tract of which appellee's land is a part; and (2) by virtue also of the provisions of the so-called Hambecker Correction Deed, whereby Wright expressly set up a plan and scheme of restrictions to be applicable to "surrounding property owned by the said J. V. Wright," which provisions are binding on all subsequent purchasers from and through Wright, including appellee. In our opinion appellee's pleadings and the facts and circumstances of the case properly present a class suit. Womack v. Dean, Tex.Civ.App., 266 S.W.2d 540; Faubian v. Busch, Tex.Civ. App., 240 S.W.2d 361 (Ref. n. r. e.); Lowrance v. Woods, 54 Tex.Civ.App. 233, 118 S.W. 551. We overrule appellants' points Nos. 3, 4, 5, 6, 7, 8, and 9.

■ Many years ago when J. V. Wright, now deceased, acquired the 122½ acre tract,

it was farm land located several miles from the City of Dallas. As the City grew and expanded the acreage gradually changed in character from primarily farm land to property adaptable to suburban residential purposes. In the year 1933 Wright began selling lots and tracts suitable for residential purposes and by the year 1945, when he died, had disposed of most of his 122½ acres. The first group of lots he sold was not designated as an addition. Later a second group and still later a third group of lots were designated by Wright as Inwood Addition No. 1 and Inwood Addition No. 2 respectively. A fourth group of lots sold by Wright lay to the east of Inwood Addition No. 2 and between that Addition and the 100 ft. right-of-way of the St. Louis and Southwestern Railroad, known as the Cotton Belt Railroad. The 11.9 acre tract in controversy, part of Wright's original 122½ acres, lies east of the railroad right-of-way and is separated from the rest of the original 122½ acres by the railroad's property. Wright did not subdivide this acreage. In 1945 he conveyed it to his daughter-in-law, surviving widow of his deceased son, the deed containing no restrictions. In 1953 the daughter-in-law sold the tract, still not subdivided, to appellee, this deed also containing no restrictions.

Meantime the City of Dallas had continued to grow and expand. Some time ago the City annexed an area which included all of Wright's original 122½ acre farm. The first group of lots sold by Wright was given a designation as City Block No. 5601. Inwood Addition No. 1 became City Blocks Nos. 5602, 5603, and 5604. Inwood Addition No. 2 became City Blocks Nos. 5605, 5606, and 5607. The fourth group of lots, including the Hambecker lot, became City Block No. 5608. The 11.9 acre tract on the other side of the railroad, the land in controversy, became City Block No. 5609.

J. V. Wright did not dedicate his entire 122½ acres as one unit or real estate addition, or officially file any map or plat for record in which the whole 122½ acre tract

plaintiffs felt would violate the said ordinances, or alleged deed restrictions. Thereafter in May 1954 appellee, the

former defendant, filed this suit as plaintiff to clarify the status of its property.

is shown as one addition. However for purposes of clarity we present herewith a map or plat of the whole 122½ acres and its subdivision as of the date of the trial.

It is our opinion and we hold that as a matter of law the undisputed evidence shows that J. V. Wright did not adopt a general plan or scheme of restrictions applicable to his entire 122½ acre tract, including appellee's property. In an instrument dated February 2, 1937 specifically referring to but obviously limited to Inwood Addition No. 1, Wright provided for certain restrictions, the instrument containing this language: "in order to give record in evidence of our general plan and scheme for the development of *said addition* do hereby adopt the following restrictions governing the use of the property in said addition * * *". (Emphasis supplied). We find nothing in this instrument referring to restrictions on land lying outside of Inwood Addition No. 1, as does appellee's land. In another instrument dated November 24, 1937 similar provisions were made as to Inwood Addition No. 2.

Moreover the instrument pertaining to Inwood Addition No. 1 contains this language: "These restrictions, covenants and conditions shall terminate and be of no further effect after 35 years from date of November 27, 1936, unless sooner released by mutual consent of a majority of all the owners of lots or tracts in said addition." Similar language is found in the instrument pertaining to Inwood Addition No. 2.

In our opinion the above two instruments conclusively negative the idea that there was any plan or scheme applicable to the whole 122½ acres owned by J. V. Wright. For they expressly provide that deed restrictions in Inwood Addition No. 1, or in Inwood Addition No. 2 may be changed or abolished by a majority vote of property owners within either addition separately from and regardless of the property owners in the other addition, and separately from and regardless of the other property owners in other parts of Wright's original 122½ acre tract. It is thus made apparent that there is no mutuality or reciprocal uniform covenant providing for a general plan or scheme of restrictions for the whole 122½ acre tract as contended by appellants. Green v. Gerner, Tex.Com.App., 289 S.W. 999; Cannon v. Ferguson, Tex.Civ.App.,

190 S.W.2d 831; Russell Realty Co. v. Hall, Tex.Civ.App., 233 S.W. 996; 12 Tex. Jur. 170. Appellants' points Nos. 12, 13, and 14 are overruled.

On August 23, 1943 Wright conveyed to N. J. Hambecker Lot 23 out of the middle portion of Block 5608. The deed contains no restrictions. On August 22, 1944 Wright and Hambecker both signed a document which appellants refer to as the Hambecker Correction Deed. By this instrument Hambecker agreed that his lot should be burdened with certain restrictions, including its use "for private dwelling purposes only." Wright on his part agreed as follows:

"This Agreement is entered into and executed in clarification of the original contract and agreement for the sale of said hereinabove described property from J. V. Wright and wife, Amy Elizabeth Wright, to N. J. Hambecker and for the further consideration that similar restrictions be placed upon *other surrounding property owned by the said J. V. Wright* and and when sold and disposed of and in further consideration that J. V. Wright shall restrict his use of said surrounding property owned by him in a like manner with this agreement and restrictions so long as he is the owner and user thereof, and shall not permit same to be used in any manner not consistent with the conditions hereinabove set out and made binding upon me by this agreement." (Emphasis supplied).

At the time the above instrument was executed, J. V. Wright still owned the 11.9 acre tract now owned by appellee. He also still owned a few lots scattered through the other blocks of his original 122½ acres. He owned no other property in the John Howell Survey, of which his 122½ acre tract was a part. The record is silent as to whether he owned other property not in the John Howell Survey.

Did the Hambecker Correction Deed impose restrictions on appellee's property? In our opinion it did not. What consti-

tutes "surrounding property"? Certainly it cannot be reasonably said, and appellants do not contend, that other property owned by Wright literally surrounded Hambecker's lot. It is appellants' contention that the phrase "surrounding property owned by the said J. V. Wright" means "the remaining or all property owned by the said J. V. Wright *in the neighborhood of* and in any direction from the Hambecker lot" (emphasis supplied), and that such language is legally sufficient expressly to include appellee's property.

We are unable to agree with appellants. If "surrounding property" means "in the neighborhood of" it is too general, indefinite and inexact to constitute a sufficient real estate description to impose restrictions, or to constitute constructive notice to appellee of restrictions on the 11.9 acre tract in dispute. What are the exact boundaries of a neighborhood? Who can say with exactitude where a neighborhood begins, or where it ends; or whether a particular piece of land is within it, or is just barely outside of it? No surveyor could definitely locate a lot or tract of land, or lay out its metes and bounds if all he had to guide him was the information that it is "in the neighborhood of" another tract of land. In the instant case appellee's property is on the other side of the railroad tracks from appellants' property. Does that put the two tracts in different neighborhoods?

■ We shall not pass on the legal effect of the Hambecker Correction Deed any further than to say that in our opinion the words "surrounding property owned by the said J. V. Wright" are too vague, general, indefinite and inexact to furnish within themselves, or by reference to some other existing writing, the means or data by which appellee's land may be identified with reasonable certainty as land to be subjected to the restrictions set out in the Hambecker Correction Deed. Broaddus v. Grout, 152 Tex. 398, 258 S.W.2d 308; Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703; 12 Tex.Jur. 167. We overrule appellants' point No. 2.

■ The record shows that the City of Dallas and the Attorney General of the State of Texas were impleaded by appellee in connection with the validity of and alleged violation by appellee of the City's zoning and building ordinances. The City answered that it had issued a building permit to appellee upon appellee's representation that it desired to construct a church and church school, and that therefore there was no justiciable controversy between appellee and the City. The record also shows that a set of plans prepared by an architect was submitted to the City and was officially approved and stamped by the City Building Inspector. Appellants say in connection with the issuance of this permit, that appellee failed to comply with City ordinances because only incomplete plans with no specifications were attached to appellee's application for a permit. But no appeal was taken by anyone from the action of the City Building Inspector in granting the building permit. Moreover, the permit provided only for the construction of the foundation, and there is no evidence to indicate that appellee intends to go further with its improvements without obtaining an additional permit. Anyway the trial court's judgment expressly provides that appellee must construct its improvements and use the premises for synagogue and religious educational purposes "subject to compliance with all ordinances of the City of Dallas." By so providing the court did not, as contended by appellants, render a judgment which is not final but merely advisory. We overrule appellants' points Nos. 10, 11, 15, 16, 17, and 19.

In view of the foregoing holdings other questions raised by appellants become immaterial. Therefore if any of them presents error it must be considered harmless error. We overrule appellants' points Nos. 1, 18, and 20 to 32 inclusive.

Finding no error which under the particular circumstances of this case constitutes reversible error, we affirm the trial court's judgment.

Affirmed.

## On Rehearing.

On rehearing appellants again assert that the issues here involved cannot be adjudicated in this case because of the lack of necessary and indispensable parties, especially the present owner of the Hambecker lot.

The Hambecker correction deed is not the character of contract intended to apply solely as between grantor and grantee. It is more than a private personal contract between Hambecker and Wright. Its terms plainly indicate that it was entered into for the benefit of others as well as the original signers. The language of the deed plainly shows such intention. We quote from the deed:

"Whereas, said deed of conveyance failed to recite the restrictions as set out upon the property in said acreage tracts as heretofore conveyed by the said J. V. Wright and wife, Amy Elizabeth Wright, to the adjoining property owners * * * and for the further consideration that similar restrictions be placed upon other surrounding property owned by the said J. V. Wright *and when sold and disposed of * * *.*" (Emphasis ours).

Appellants themselves recognize the true character of the Hambecker correction deed when, in support of their contention that Wright pursued a general plan and scheme for the development of his whole 122½ acre tract, they say: "The jury's finding that no general plan existed was without basis in fact, * * *. Every act of Wright bespeaks the singleness of this purpose. * * *. The circumstance of the omission of the usual restrictions from the original Hambecker deed and the subsequent execution of the Hambecker Correction Instrument but emphasize and make clear that purpose. *By that instrument he brought to a full consummation, of record, the plan from which he had never deviated.*" (Emphasis ours).

It has long been the established law of this State that when restrictive covenants in a deed are purportedly part of a general plan and scheme, or themselves attempt to establish a general plan and scheme, interested landowners may maintain a suit for the purpose of enforcing said restrictions though they were not parties to the original covenants. The key case so holding is Hooper v. Lottman, Tex.Civ.App., 171 S.W. 270. In Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, our Supreme Court quotes at length and approves the holding in the Hooper case. Other courts have applied the rule. Finley v. Carr, Tex.Civ.App., 273 S.W.2d 439; Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275; Russell Realty Co. v. Hall, Tex.Civ.App., 233 S.W. 996; Allen v. Avondale Co., 135 Fla. 6, 185 So. 137. The Hambecker correction deed contains covenants of the kind and character passed on in the above cases.

Of course, if such a suit may in some instances be maintained by owners who were not parties to the original covenant in an effort to enforce restrictions, a suit may also be maintained by an owner to show that he is not properly to be included among those allegedly bound by the retrictions. This is such a suit. Appellee says the covenants in the Hambecker correction deed do not reach to and include appellee and its property. Appellee is entitled to an adjudication of the question. Notwithstanding Wright's obvious attempt to set up some sort of general plan in the Hambecker deed, we held in our original opinion, and we still hold that the land description of the area to be included in the plan is too vague and indefinite for it to be said that appellee's property is included.

Under the authorities cited here, and in our original opinion, the present owner of the Hambecker lot was not a necessary and indispensable party, hence the fact that said owner is not a party herein is not fatal to the prosecution of this action as a class suit.

The motion for rehearing is overruled.