WALKER v. DORRIS et al.

No. 14885.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 21, 1947.

Rehearing Denied Dec. 19, 1947.

Martin, Moore & Brewster, of Fort Worth, for appellant.

Wm. Pannill, of Fort Worth, for appellees.

HALL, Justice.

This is another restriction suit applicable to the Hillcrest Addition to the City of Fort Worth, Tarrant County, Texas. The property involved is Lot 2 in Block 13 of said Addition, which is owned by appellant, Dr. J. N. Walker, said lot being adjacent to Lot 3 owned by appellee, H. E. Kutzschbach, and Lot 3 is adjacent to Lots 4 and 5 owned by appellee, Paul D. Dorris. Appellees reside on their respective lots. They brought suit for injunction to restrain the appellant, a medical doctor, from conducting his practice in a resident house located on said Lot 2. Their pleadings and the testimony reflect that the use said doctor was making of the premises was that of a professional business rather than residential.

Besides the defendant's general denial, he plead that the use he was making of the premises was not of a business or commercial nature and therefore was not in violation of the restriction set out in his deed. He also pleaded in the alternative that if he was using the premises in violation of the restriction that appellees had waived their right to complain of such use by permitting more and other serious violations in the same neighborhood over a long period of time. After the trial court had heard the evidence and argument of counsel, it entered judgment permanently enjoining the appellant from practicing his profession in the resident house in question. The appellant perfected this appeal by assigning two errors, as follows:

(1) "The error of the court in instructing the jury to return a verdict for the plaintiffs when the evidence failed to show as a matter of law that the defendant was violating any of the restrictions governing his property and when there was evidence showing that by acquiescing in similar uses of other residences in said Addition over a long period of time, the restrictions, insofar as they applied to a profession like the practice of medicine in a residential building, had been waived and abandoned."

(2) "The error of the court in overruling the defendant's motion for instructed verdict when the evidence showed as a matter of law that he was not violating any of the restrictions governing his property and that by acquiescing in similar uses of other residences in said Addition over a long period of time, the restrictions, insofar as they applied to a profession like the practice of medicine in a residential building, had been waived and abandoned."

The appellant admits that he is not residing in the building in question. He further admits he is using the building solely for professional purposes and that he has made some minor changes inside, converting the bath room into a laboratory.

As we view the points in question, we find the first one covers the proposition as to whether practice of medicine by appellant in the residential building violates the restriction, which is plead and proved by the appellees as a covenant running with the land, a part of which is as follows: "That no building shall be erected on said premises except a dwelling house and outbuildings thereon." The appellant admitted that he had read the restrictions and knew what was in them before he purchased the place.

In deciding the sole question as to whether or not a house built and restricted for residential property shall be in violation of such restriction when it is abandoned for residential purposes and used exclusively as a hospital and/or office building for a physician, we must first review the intent and purpose of the language used in the restriction.

■■■ In 26 C.J.S., Deeds, § 164, starting at page 525, we note that: "in the absence of an abandonment, waiver or consent to its violation, a restriction of the use of premises to residential purposes may be enforced according to its terms by one entitled to the benefit thereof. Such a restriction will not be extended by implication to include anything not expressed therein * * * and the word 'residence' in such restrictive covenant means a dwelling house where a person lives in settled abode. As employed in building restrictions the words 'dwelling house' are, in the absence of anything to the contrary, to be construed in their ordinary sense as a house occupied as a residence, in distinction from a store, office, or other building. The term defines the use to which a building shall be put and not merely the form or character of the structure, and a provision restricting the erection of buildings other than dwelling houses or residences applies not only to the erection of the building in the first place, but likewise forbids the use of a building erected as a dwelling house or residence for other than residential purposes." Continuing on page 527 under the heading, "Partial use for business or professional purposes," we find the following: "Where the use of a building is restricted to a 'private dwelling,' the owner will not be allowed gradually to change the character of a building from a residence to a place of business." We note the next sentence in the citation is in favor of the appellant, "a restriction against the erection of any building other than a private dwelling house is not violated by the use of a portion of a residence as a dental office, or by the use of premises in an inconspicuous manner as medical offices by physicians." On page 528, we find the following language under the term, "Hospitals and institutional uses. Restrictions against use otherwise than for residence purposes and dwellings have been held violated by the use of a building for a sanitarium or maternity hospital or a nursing or convalescent home or a hospital and a home for nurses. It has, however, been held that a use of a portion of a dwelling as a private hospital may be permitted, and it has been said that the test as to whether a nursing home violates a restriction of the use of the premises to a single private dwelling house is whether the building still retains its general character as a private dwelling. Permission to receive and care for medical and surgical patients does not permit the erection of a hospital where the erection of buildings other than dwelling houses is precluded."

The appellant cites and principally relies upon the case of Briggs et al. v. Hendricks et al., Tex.Civ.App., 197 S.W.2d 511, 512. We find the Briggs case distinguishes itself from the case at bar because in the Briggs case the facts show that the physician merely occupied a portion of his residence as an office and where he practiced his profession. In the case at bar neither the appellant nor any one lives in the house but he has converted it into a medical office building. Then too, the restriction in the Briggs case partially destroyed the residential portion thereof by inserting paragraph (e) as follows: "No noxious or other offensive trade or activity shall be

carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood." No such qualification is inserted in the restriction in the case at bar. We find the Briggs case more in point with the case of Carr et al. v. Riley et al., by the Supreme Judicial Court of Massachusetts, reported in 198 Mass. 70, 84 N.E. page 426, 428, wherein the restriction "no buildings on said land shall be used for any purpose except for that of a dwelling house" was qualified by a second restriction with reference to prohibiting manufacturing, mercantile or mechanical buildings. The court said in substance that if the meaning of the first quoted sentence was conclusive, then why was the second restriction, namely, that "no building erected on said land shall be used for any manufacturing, mercantile or manufacturing purposes," inserted at all? The court further stated that "every instrument should be so construed, if reasonably possible, as to give effect to every clause." However, the court decided the Briggs case principally upon the theory that it would be impossible for a physician to practice his profession and never use his residence to receive patients who called for treatment; the court, however, may have had the limitation clause upon the restriction in mind when it said the following: "The restrictions here in question were reasonably susceptible to the construction that the limitation of the lot to residential use was not intended to prevent a physician residing thereon from there practicing his profession in and from his home and if the restrictions are reasonably subject to the construction which permits such use, then, we have seen, they must be so construed."

The principal facts in the instant case were introduced from the record in the case of Hemphill v. Cayce, reported in Tex.Civ.App., 197 S.W.2d 137, which involved Lot 1 in Block 23 of said Addition. We, therefore, refer to said cited case for facts surrounding the points, as well as the many cases cited therein for the law of the case. In addition thereto we cite and quote in part the case of Booth et al. v. Knipe et al. from the Court of Appeals of New York, 225 N.Y. 390, 122 N.E. 202, 203, wherein a similar question was involved, in which the court said: "The covenant has a twofold aspect. Hart v. Lyon, 90 N.Y. 663. There is the affirmative duty to build. That duty has been discharged, and we do not need to determine whether it was limited to the first grantee. (Citing case). There is the negative duty to refrain from the prohibited use. That duty runs with the land, and charges all who take with knowledge of its terms. * * * The covenant is not merely to build a structure adapted for a given use. The covenant is that the structure, when built, shall be restricted to that use. It 'shall be used only as a private residence,' and a private residence 'for one family.' This is more than a limitation upon construction. It is a restriction of enjoyment. * * * We cannot doubt that the attempted use is a breach of the restriction. The lease provides that the building shall be 'occupied as a sanatorium and not otherwise.' The evidence makes it clear that it is used as a maternity hospital. By no stretch of language can we say that this is equivalent to use 'as a private residence for one family.' "

In the case of Heisler v. Marceau et al., by the Supreme Court of Florida, 95 Fla. 135, 116 So. 447, 448, which involved the violation of a restrictive covenant similar to the one involved in the instant case, wherein parties seek to enjoin the erection and use of a building as a sanitarium and the defense was planted squarely upon the denial of the breach of the covenant, in upholding the restriction the court said: "There is no dispute that the proposed building is to be used and occupied as a private sanitarium. Its plan and specification, according to the evidence, indicate unmistakably that it is designed for that purpose. It is not a residence. It is not 'strictly residential' in type or character. There is no evidence that it is the intention of the defendants to use it as a residence, as distinguishable from the purpose for which it is designed. * * *

"While this court, in all the cases, has given effect to the doctrine that covenants restraining the free use of real property are not favored, yet it has recognized, as

equally well established, that where such restrictions are confined to a lawful purpose and are within reasonable bounds, and the language employed in expressing them is clear, such covenants will be enforced. 11 Cyc. 1077; Mayes v. Hale, supra [82 Fla. 35, 89 So. 364]; Moore v. Stevens, supra [90 Fla. 879, 106 So. 901, 43 A.L.R. 1127]; Stephl v. Moore, 94 Fla. 313, 114 So. 455. And the intention of the parties to the covenant, construed in the light of the surrounding circumstances, as expressed in the whole of the instrument containing the covenant, not the opinion of witnesses as to whether a different use of premises conveyed would be helpful or detrimental, is controlling. 6 R.C.L. 849; Holmes v. Kilgore, 89 Fla. 194, 103 So. 825.

"That a sanitarium, to which persons suffering from various maladies may resort and congregate for care or treatment, is not a residence, would seem to be clear, and that use of premises as a sanitarium does not comport with a covenant that such property shall not be used for any purpose 'inconsistent with the nature of a strictly residential section,' is equally clear. From the standpoint of its use by the owner, such an institution is a commercial enterprise." See also Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L. R. 1127.

■ We, therefore, overrule appellant's contention in point No. 1.

■■ The question of waiver and abandonment as presented by the appellant's point No. 2 is not well taken. For such contention he relies upon the fact that appellees have allowed, without question, one A. M. Farris, a chiropractor, to have an office in his home immediately across the street from the property in question and that therefore they have waived their right to complain against a doctor applying a residence for the same purpose. In the first place, as stated heretofore, the appellant does not live in this residential property; his home is some ten blocks from the house in question which he has converted into a hospital. While we are not called upon to pass upon the question of whether or not a chiropractor and/or a

medical doctor violates the restriction by continually practicing in his residence since it is not in point here, but what we intend to hold is that the mere fact that there may be a few violations of the restrictions tolerated by the appellees which have not affected the value of their property for residential purposes, yet the law is plain that this alone will not prevent them from protecting themselves from injury by another, and more detrimental infraction of the restriction. As set out in the case of Hartwig v. Grace Hospital, 198 Mich. 725, 165 N.W. 827, quoting the syllabus, "Owners in a district restricted to dwellings, who stand by and allow a dwelling to be altered at different times, at a large expenditure of money, through a number of years, out of all semblance of a dwelling, and used as a hospital, will not be granted an injunction to restrain its maintenance as such, although an injunction will be granted to restrain additional buildings." Another syllabus in said case is quoted as follows: "A home for nurses of a nearby hospital is not a 'residence,' within a deed restricting the building of other than residences."

It is not a question in this case whether the chiropractor has established himself sufficiently to have broken the covenant so far as his particular place is concerned, but the question is whether appellees have waived their rights to preserve the restriction merely by allowing the chiropractor to practice in his home, and by such waiver it will allow by law appellant to completely convert a residence into a business or office building. We do not find under the authorities that such waiver exists.

We have passed upon the stated facts in the Hemphill case and held that the parties had not waived their right to protect their property against an infraction. In addition to the cases cited in the Hemphill case, to which we refer, we would like to add the following case, to-wit: Whitmore v. Stern, 25 Ohio App. 344, 158 N.E. 203, wherein it was held that by a covenant the premises shall be used for residential purposes only is not violated by placing business signs on dwellings.

To hold that the appellant would have authority to transform a residence into non residence property, on the theory that

it was being used for professional purposes rather than for business purposes, would have the tendency to vitiate and destroy the restriction because there are many professions.

Appellant's complaints are overruled and judgment of the trial court is affirmed.