**WESTERN MANAGEMENT CORPORATION et al., Appellants,**

v.

**HIGH CREST REALTY COMPANY et al., Appellees.**

**No. 16057.**

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 8, 1960.

Rehearing Denied Feb. 5, 1960.

* Now 28 U.S.C.A. § 1738.

Ollice Maloy, Jr., Donald C. Bubar and Melvin F. Adler, Fort Worth, for appellants.

Kenneth F. Holbert, Dallas, and L. Clifford Davis, Fort Worth, for appellees.

RENFRO, Justice.

The plaintiffs, Western Management Corporation and Howard Patterson, brought suit to cancel residential purposes restrictions and prohibition of sale of liquor on certain lots in a real estate subdivision, and to validate a replatting of said lots as a shopping center. Named defendants were twelve lot owners in the subdivision, one of the original subdividers and one lienholder. Defendants were sued individually and as a class. Some of the defendants later joined plaintiffs, and several other lot owners intervened on the side of plaintiffs.

In a nonjury trial all relief was denied, the judgment reciting that no change in conditions existed of such a nature as to demand removal of the restrictive covenants.

No findings of fact were requested or filed so the usual presumptions must be indulged in favor of the judgment.

In January, 1952, High Crest Realty Company and Chase Building Products dedicated the Carver Heights Addition to the City of Fort Worth. The filed plat shows the land to be rectangular in shape and running generally north and south. The northeast portion is shown as Block T–1 and is not subdivided into lots. The plat shows "new proposed Rosedale Street" entering near the northwest corner of the subdivision, then going diagonally northeast and north of Block T–1. Hedgeman Road separates Block T–1 and the remainder of the subdivision. All the blocks south of Hedgeman Road are subdivided into lots. During January, 1952, the above named subdividers filed an instrument for record providing in part that all lots in Blocks T, U, V and W should be used for residential purposes only, and no structure should be erected on any of such lots other than one single family dwelling. All the above blocks abut on Hedgeman Road immediately across said road south of Block T–1. It was the intention and general plan of the dedicators to establish a high-class shopping center on Block T–1.

There were about 400 residential lots in Carver Addition, and before the hereinafter mentioned events transpired more than 300 homes had been erected and occupied on said lots.

At some subsequent date the State Highway Department designated East Rosedale as a State Highway, changed its course so that it passed through the center of Block T–1, with the result there was not sufficient space either north or south of East Rosedale in Block T–1 for the establishment of such shopping center as planned by plaintiffs.

As of March, 1958, plaintiffs owned all of Block T–1 and a number of lots in Blocks T, U, V and W. On that date they filed a plat designated as Block 1, Randolph Valley Subdivision. The subdivision included Block T–1 and numerous lots in the above designated blocks which belonged to plaintiffs. The southern boundary was marked by a curving street designated as Paseo Drive. Plaintiffs intend, if the residential restrictions are removed from the lots in Blocks T, U, V and W of the original Carver Heights Addition, now included in Randolph Valley Addition, to erect a shopping center on said lots.

The general building scheme has been followed in Blocks T, U, V and W and the record shows no violations. The proposed change would take 25 or more lots from the area restricted to residential use and convert them to commercial usage. Some of the residential streets would be shortened.

The defendants testified the proposed changes would increase traffic and accompanying hazards in the restricted area, would disturb the quiet enjoyment of their homes and would adversely affect the value of their property.

■ The testimony was strongly contradicted by plaintiffs and interveners. The weight to be given the testimony, however, was a matter for the trial court to determine.

■ Plaintiffs contend the court should have applied the principle of balancing the equities. In the absence of findings of fact we must, under the record before us, assume the trial court did balance the equities and that he determined the equities were with the property owners who sought to uphold the restrictions.

In Cowling v. Colligan, Sup., 312 S.W.2d 943, 946, the court said: "The equities favoring the particular owner is only one facet of the judicial inquiry. Those equities must be weighed against the equities favoring the lot owners who, having acquired their property on the strength of the restriction, wish to preserve the residential character of the area. The judgment must arise out of a balancing of equities or of relative hardships." Further, said the court, " 'if the benefits of the original plan for a restricted subdivision can still be realized for the protection of the interior lots, the restriction should be enforced against the border lots, notwithstanding that such lot owners are deprived of the most valuable use of their lots.' " It is undisputed the lots on which plaintiffs seek to remove the restrictions are still suitable for residential purposes and no violations have occurred on said lots, or, indeed, in the blocks heretofore mentioned.

In Faubian v. Busch, Tex.Civ.App., 240 S.W.2d 361, 367, in a somewhat similar situation, the court held: "It is our opinion that equity in such a situation is with the property owners who desire that their home district be confined to its original purpose, and that equity is not with one or two or a few who seek to violate those conditions because they happen to own the particular piece of property which was most affected by changed conditions. In considering such matters it has been held that the best interest of the property owners generally within the restricted area should be considered and not the best interest of only one or two or even a few property owners. It has also been held in such cases that changed conditions outside of the restricted area must not be permitted to terminate the restrictions within the restricted area when such would cause property owners within the restricted areas to suffer damages. Bethea v. Lockhart, Tex.Civ.App., 127 S.

**368**

W.2d 1029, and Scaling v. Sutton, Tex.Civ. App., 167 S.W.2d 275."

In the case before us the only changed condition occurred in Block T–1 which is not restricted to residential purposes, and which area is entirely apart from the area restricted to residences. Incidentally, there is no pleading or evidence of waiver or abandonment on the part of defendants to enforce the covenants of restriction.

■ In view of the evidence we would not be justified in setting aside the judgment and presumed finding of the trial court that equity was with the property owners who desired that the residential restrictions be retained as valid and binding.

Judgment affirmed.