Donald E. WILLIAMS et al., Appellants,

v.

R. N. SMITH et al., Appellees.

No. 16753.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 18, 1966.

Rehearing Denied Dec. 30, 1966.

Simon & Simon, and Harold D. Hammett and Richard U. Simon, Fort Worth, for appellants.

Tilley, Hyder & Law, and Samuel A. Denny and Thos. H. Law, Fort Worth, for appellees.

## OPINION

LANGDON, Justice.

The appellants as plaintiffs being owners of single family dwellings in Ridglea Hills, brought this suit under the Uniform Declaratory Judgments Act, Art. 2524–1, Vernon's Ann.Tex.Civ.St., to have the district court declare that the single family residential restrictions originally placed upon the Ridglea Hills addition in Fort Worth are in force and effect and that the appellees (defendants) cannot build apartments, condominiums, or multi family dwellings within such addition.

Trial before the court without a jury resulted in a take nothing judgment against appellants. The trial court indicated that there was little conflict, if any, in the evidence including testimony and numerous exhibits bearing upon the material facts and that disposition of the case depended upon the application of the law to the undisputed facts adduced upon trial. No formal findings were requested and none were filed.

The court by its judgment held that all of the restrictions contained in the original dedication of the Ridglea Hills Addition in 1946 have been completely abandoned and waived by the adoption of seven revisions and amendments to the original dedication which were made and filed in 1953, 1954 and 1955, when taken in connection with the actions and conduct of the various owners and their assigns in the years that followed. That finally, while not controlling, the matter of balancing equities should be taken into consideration. The take nothing judgment against the appellants rendered on January 19 was signed on January 26, 1966.

By five points of error the appellants contend that the trial court erred in that its judgment is not sustainable on the grounds of abandonment, waiver, estoppel or laches and that the court erred in balancing the equities in favor of the appellees rather than in their favor.

We reverse and render.

A summary of the plat and dedication history of the land involved as reflected by the various instruments filed and recorded in the plat and deed records of Tarrant County is summarized as follows:

### Original Plat and Dedication, January 10, 1946

The original plat, dedication and restrictions for "Ridglea Hills" Addition was dated January 10, 1946, filed January 11, 1946, and recorded in Vol. 388–B, p. 225 of the Plat Records of Tarrant County, Texas.

This original dedication setting out restrictions for "Ridglea Hills" outlined a general plan for the development of the addition for single family residences, providing for approval of plans, setbacks, minimum costs, easements, etc.

Under Section 2, Use of Land, subparagraph (b) provided: *"No lot or plot shall ever be used for any purpose other than single family residence purposes. No dwelling house located thereon shall ever be used for other than single family residence purposes, nor shall any outbuilding or structure located thereon be used in a manner other than incidental to such family residence purposes. The erection and/or maintenance and/or use of any building, or the use of any lot or plot for other purposes, including but not limited to commercial or professional purposes—for example, stores, shops, flats, duplex houses, apartment houses, rooming houses, tourists' courts, schools, churches, hospitals, and filling stations, but without limitation to such examples—is hereby expressly prohibited.*

*"Only one single family residence shall be constructed or permitted on any lot or plot.*

*"No garage or outbuilding on any lot or plot shall be used as a residence or living quarters, except by servants engaged on the premises."* (Emphasis supplied.)

Under Section 10, General, it is provided: *"Ridglea Hills may include restrictions, other than those set out herein, in any contract or deed to any lots or plots without otherwise modifying the general plan above outlined, and such other restrictions shall inure to the benefit of and bind the respective parties in the same manner as though they had been expressed herein.* (Emphasis supplied.)

*"The restrictions herein set out shall be referred to, adopted and made part of each and every contract and deed executed by and on behalf of Ridglea Hills conveying said property, or any part thereof, to all such intents and purposes as though incorporated in full therein; and each such contract and/or deed shall be conclusively held to have been so executed, delivered and accepted upon the express conditions herein stated.*

*"All of the restrictions, covenants, reservations, liens and charges appearing herein, as well as those appearing in any contract, deed or other conveyance to or covering any part of this property, shall be construed together, but if any one of the same shall be held to be invalid, or for any reason is not enforced, none of the others shall be affected or impaired thereby, but shall remain in full force and effect."*

Under Section 11, Right to Enforce, the restrictions provided: *"The restrictions herein set forth are imposed upon each lot and plot of land for the benefit of each and every other lot and plot, shall constitute covenants running with the land, and shall inure to the benefit of and be binding on Ridglea Hills, Ltd., its successors and assigns, the individuals comprising such*

*partnership, their assigns, and each and every purchaser of and person acquiring any interest in any part of such land, and their assigns, and all persons acquiring any of the land covered by these restrictions shall be taken to agree and covenant to conform to and observe all such restrictions as to the use of said land* (no restrictions or covenants herein set forth shall be binding on any corporation, person or persons except in respect to breaches committed during the time such corporation or person owns or has an interest in said land or part thereof); and Ridglea Hills, its successors and assigns, and the partners thereof, their heirs, assigns, executors and administrators, *and the owner or owners of any part of such land and of any interest therein, acting jointly or severally, shall have the right to sue for and obtain an injunction, to prevent the breach of, or to enforce the observance of, the restrictions and covenants above set forth in addition to the ordinary legal action for damages, and the failure of any one or all of such persons to enforce any of the restrictions or covenants herein set forth at the time of its violation, shall in no event be deemed to be a waiver of the right to do so at any time thereafter, nor shall the failure to enforce such restrictions as to any one or more lots or plots, or as to any one or more owners thereof, be deemed a waiver of the right to enforce them as to any and all other lots and owners.*" (Emphasis supplied.)

Section 13, Duration, provided that: "All of the restrictions and covenants herein set forth shall continue and be binding upon Ridglea Hills, its successors and assigns, the individual partners thereof, and their heirs, assigns, executors and administrators, and all parties claiming by, through or under it or them, for a period of twenty-five (25) years from the date this instrument is filed for record in the office of the County Clerk of Tarrant County, Texas, and shall automatically be extended thereafter for successive periods of fifteen (15) years each; provided, however, that at any time within

five years prior to the expiration of the first twenty-five year period, or within five years prior to the expiration of any fifteen year period thereafter, the owners of the legal title to the lots or plots having at the time more than fifty per cent of the area shown on the map attached hereto and covered by this dedication, may provide for the release of any and all of the lots hereby restricted, from any one or more of said restrictions and covenants at the end of the first twenty-five year period, or at the end of any successive fifteen-year period, by executing and acknowledging a proper agreement or agreements in writing for such purpose and filing the same for record in the manner then required for the recording of land instruments."

The original dedication permitted the subdivision of a lot into two or not more than three smaller lots. The addition consisted of lots 1 through 5 of Block 1; lots 1, 2 and 3 of Block 2; lots 1 through 11 of Block 3; and lots 1 through 17 of Block 4 for a total of 36 estate sized lots.

It will be noted that Section 2 of the original restrictions not only affirmatively and exclusively provided for single family residences but further emphasized this use by providing that the erection or maintenance or use of any building for other purposes, including flats, duplex houses, apartments and rooming houses, etc., was expressly prohibited.

Further, it will be observed that Section 10 of the original dedication provided that "Ridglea Hills" may include restrictions in addition to those enumerated in any contract or deed to any lots or plots without otherwise modifying the general plan above outlined. Thus, specifically it was provided that while additional restrictions might be imposed upon the property which under the general plan provided for an addition devoted exclusively for single family residence purposes there was no authority to lessen or vitiate any of the restrictions originally placed upon the addition.

### First Revision—April 15, 1953

April 15, 1953—an instrument was filed which was captioned, "Dedication of Blocks 29 to 31 (Both Inclusive) of Ridglea Hills, being a revision of Lots 5, 6, 7, 8, 9 and portions of Lots 4, 10 and 11, in Block 4, * * * (of the original plat and dedication)" Section 1 of the revision provided that the lots shall be used for private residence purposes only.

### Second Revision—July 9, 1953

On July 9, 1953, an instrument was filed with the caption, "Dedication of Blocks 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 55, and 56, of Ridglea Hills, * * * being a Revision of Block 3 (consisting of lots 1–11, both inclusive), and Lots 1, 2, 3, 12, 13, 14, 15, 16, and 17 and portions of Lots 4, 10 and 11, all in Block 4, of Ridglea Hills, * * *." (The portions of the latter three lots were those remaining after the first revision of April 15, 1953.) This revision abutted the property covered by the first revision. Section 1 thereof provided that the lots shall be used for private residence purposes only except that Blocks 44, 45 and 56 may be used for single family dwellings and multiple apartment units. Blocks 32 and 41 were dedicated as blocks only and were not otherwise amended by the revision. At this point Blocks 32 and 41 created by the second revision and lots 1–5, Block 1 and lots 1, 2 and 3 of Block 2, of the original dedication of 1946 had not been revised or amended.

### Third Revision—May 28, 1954

On May 28, 1954, there was filed a "Dedication of Block 47 and Lots 2 through 6, both inclusive, in Block 48 of Ridglea Hills, * * * being a Sub-division of portions of Lots 1 and 2 in Block 1, of Ridglea Hills." This revision provided that, "No lot or plot shall ever be used for any purpose other than single family residence purposes."

### Fourth Revision—July 15, 1954

On July 15, 1954, a revision was filed subdividing Blocks 44, 45 and 56 which were formed pursuant to the second revision filed July 9, 1953. Under this revision Block 44-A, a subdivision of said three blocks was created which is commonly referred to as the "Big Lake" area. Section 1 provided that all of said lots shall be used for private residence purposes only.

### Fifth Revision—August 11, 1954

On August 11, 1954, a plat and dedication subdividing Block 32 (created by the second revision filed July 9, 1953) was filed. Section 1 provided the lots shall be used for private residence purposes only.

### Sixth Revision—March 16, 1955

On March 16, 1955, a dedication and restrictions were filed by which Blocks 46 through 58 were created in the revision of lots 3, 4, 5 and a portion of lot 2 in Block 1 of Ridglea Hills; lots 1, 2 and 3 and portions of lots 4 and 5 in Block 2 of Ridglea Hills. Section 1 provided that all lots except those in Block 47 shall be used for private residence purposes only. That *"The lots in Block 47 hereby dedicated may be used either for residential or apartment purposes. If said lots are used for residential purposes, the same restrictions applicable to all other residential lots hereby dedicated shall apply to said lots in Block 47."* (Emphasis supplied.)

### Seventh Revision—May 31, 1955

On May 31, 1955, there was filed dedication and restrictions covering Block 41 of Ridglea Hills Addition which was created by the second revision dated July 9, 1953. Section 1 provided that all lots therein, "shall be used for private residence purposes only."

The various revisions above described except the fourth contained a Section 10 which provided that, "By this Dedication

it is understood and agreed that all prior restrictions placed on said property shall be amended as shown in this instrument, * * *." Provisions contained in the fourth revision had the same effect. All of the revisions contained provisions almost identical to those in the original dedication as to "duration" and "right to enforce" the restrictions and enforcements. The revisions contained many other provisions similar to the original dedication concerning set-backs, frontage, material, approval of plans and restrictions all of which were devoted to the general purpose expressed in the original dedication of maintaining the highly desirable addition as one restricted to single family residences.

By way of summary it is to be observed that after all of the revisions above described had been filed the Ridglea Hills Addition originally created in 1946 as an exclusive residential area remained as such except for the size of the lots. It retained the same name and the same perimeter. Since the size of the lots were reduced the set-backs, roads, etc., were necessarily changed to accommodate the revised lots. As in the beginning, the addition was restricted to single family dwellings and use except that according to the sixth revision the lots in Block 47 may be used *either for residential or apartment purposes.* As shown above the second revision of July 9, 1953 provided that Blocks 44, 45 and 56 may be used for single family dwellings and multiple apartment units. These three blocks were by the fourth revision of July 15, 1954 revised and dedicated as Block 44-A, and devoted solely to an exclusive single family residence area. In the light of this history the appellants were not obligated to assume that Block 47 would be used for apartments or condominiums rather than for single family purposes in violation of the original dedication when either use was specified in the revision. Appellants were not required under the circumstances to take any action until it became clear and obvious to them that an effort would be made to violate the clear provisions of the

original dedication and the restrictions therein regarding single family use of all lots in the addition.

On August 23, 1946, Mrs. Lucille K. Tilley purchased lot 2 in Block 2 of the original dedication and under date of April 13, 1953, she joined by her husband, Rice M. Tilley (appellees), entered into a letter agreement with A. C. Luther, J. T. Luther, Jr. and Earl Wilson, Jr., whereby Mrs. Tilley conveyed to the Luthers and Wilson a part of the property which she had acquired, in the Ridglea Hills Addition, on August 2, 1946. She retained a part thereof. Mrs. Tilley, joined by her husband, executed a deed dated April 14, 1953, to Luther, Luther and Wilson, and said deed and their letter agreement, were recorded. By said letter agreement and deed, Mrs. Tilley and her husband, on the one hand, sold a part of the property lying within the original "Ridglea Hills" Addition (which she had acquired in 1946) to Luther, Luther and Wilson and she agreed that she would waive the original restrictions as against such property, and Luther, Luther and Wilson agreed that they would waive such original restrictions as against the property which she retained. The deed refers specifically to the restrictions which were placed on such properties by the original Ridglea Hills dedication and plat recorded in 388-B, p. 225, in January, 1946. We agree with appellants that by the letter agreement and deed these parties were saying to one another, in effect, that "I will waive the single family restrictions on the land which I am selling to you, if you will waive the single family restrictions on the land which I am keeping." The letter agreement also obligated the grantees to obtain a change in the city zoning from single family residence to multiple units on the property retained by Mrs. Tilley.

These agreements were thereafter carried out, in so far as Mrs. Tilley's land was concerned (being the property involved in this immediate action) by the filing of a new plat and dedication, the sixth revision, dated in January, 1955, joined by a number

of owners of property and recorded March 16, 1955. This dedication provided, "The lots in Block 47 hereby dedicated may be used either for residential or apartment purposes."

It is this 1955 dedication and restriction which the appellees depend upon as permitting the construction of apartments or condominiums on the land now identified and referred to as Block 47.

The record reflects that there were 144 owners of property on March 16, 1955, who owned land lying within "Ridglea Hills" Addition, as originally platted and restricted in 1946, who did not join in the sixth revision. These landowners on March 16, 1955, owned all of the area which was identified as Block 41, and owned 176 additional separate lots. The plaintiffs acquired title to their respective properties after May 31, 1955, the date on which the last or seventh revision was filed. None of the seven revisions were signed by all of the owners of Ridglea Hills but only by the owners in the particular area affected with exception of the first revision.

Don Williams, one of the appellants, being qualified and experienced in such matters, had made a detailed search of all of the lot transactions in Ridglea Hills since the original platting in January, 1946. While testifying he had before him exhibits which showed the area covered by the original January, 1946, plat and restrictions, and another which showed in yellow the lot ownerships which did not execute the apartment restrictions for Block 47, filed March 16, 1955, and an exhibit showing the dedication and restrictions filed on March 16, 1955. Based upon the research conducted by Mr. Williams and his testimony concerning his findings it was established and is undisputed in the record that at no time prior to March 16, 1955 had any of the owners of the property outlined in yellow and identified by lot and name executed any waivers or amendments to the restrictions, waiving the single family residential restrictions as to the property of appellees, nor had the predecessor in ownership of such properties executed any such waivers nor had their successors in ownership at any time thereafter done so.

As above reflected the Tilleys and Luther, Luther and Wilson in their attempt to release the single family restrictions imposed by the original "Ridglea Hills" platting and dedication recorded in Vol. 388–B, p. 225, made specific reference to the original restrictions in the deed between them. The sixth revision was executed by considerably less than the ownership of the lots in said "Ridglea Hills" Addition as originally platted. It violated the provisions of the original plat, deed and restrictions which were for the benefit of every lot and were binding upon every property, etc., and was contrary to the express provisions of the restrictions which set out a procedure whereby less than the total ownership can release restrictions.

Section 13, Duration providing for a twenty-five (25) year period for the restrictions, also provided that at any time within five (5) years prior to the expiration of the first twenty-five (25) years, the owners of the legal title to more than fifty percent (50%) of the area that was shown on the original plat could execute an instrument releasing the restrictions, which would become effective at the end of the first twenty-five (25) years.

The provisions of the original dedication set up the machinery whereby, after January 10, 1966, a majority of the owners could release the restrictions, effective January 10, 1971.

The instrument signed by the Tilleys and Luther, Luther and Wilson, and later joined by others, was executed prior to January 10, 1966, and was therefore contrary to the contractual provisions covering any release of restrictions.

In Norwood v. Davis, 345 S.W.2d 944 (Austin Tex.Civ.App., 1961, no writ hist.), in discussing a dedication providing modification by written consent, the court

stated, "that the restrictions were for the benefit of subsequent owners in the addition and not personal to the developer." And that, "The power to modify or amend residential restrictions may be reserved but in the exact manner provided in the dedication." See authorities cited therein.

In our opinion the sixth revision was ineffective and unenforceable in so far as it purported to waive and release the single family residential restriction in Block 47 and to permit the building of apartments therein in the absence of the contractual concurrence of the remaining property owners in the addition.

This principle was enunciated in the case of Farmer v. Thompson, 289 S.W. 2d 351 (Fort Worth Tex.Civ.App., 1956, ref., n. r. e.), in which it was held: "Undoubtedly, all the property owners in the Addition had the right to modify the contractual restrictions. But it requires the same mutuality to vary the restrictions as it did to create them. One party cannot modify a completed contract, nor can one owner in a restricted subdivision modify the restrictions without the concurrence of all the others. (Citing authorities)."

Apparently from the record the primary basis for the court's decision was that the seven revisions above described completely emasculated, destroyed or abandoned the original 1946 restrictions and the general plan for a single family residential addition. We are in disagreement with this conclusion. In our opinion the revisions were consistent with the development of the addition, exclusively for single family residences. The fact that the appellants acquired and occupy homes on such revised lots did not make them parties to violations of such a nature as to estop them from enforcing the single family residential restrictions. An intentional and complete abandonment of the latter restrictions finds no support in this record. The testimony

of the developer-dedicator that, "we had no intentions of keeping any of it" does not change the legal effect of the original dedication. The purchasers of the property were not bound by the unexpressed intentions of the dedicator. The various revisions which changed lot sizes, lot plans, street plans, and eliminated the bridle path were consistent with the original single family residential restrictions. Until the appellees attempted a departure therefrom there had been no expressed intentions by anyone to abandon the single family residential restrictions nor had there been any projected violations thereof except as to Blocks 44, 45 and 56 created by the second revision on July 9, 1953, and on July 15, 1954 were dedicated as Block 44–A with lake lots restricted to single family residences.

In this connection we call attention to the underscored portion of Section 11 of the original dedication in which it is stated, " * * * nor shall the failure to enforce such restrictions as to any one or more lots or plots, or as to any one or more owners thereof, be deemed a waiver of the right to enforce them as to any and all other lots and owners." And Section 10 of the original dedication states that if any one of the restrictive covenants therein " * * * for any reason is not enforced, none of the others shall be affected or impaired thereby, but shall remain in full force and effect."

In the case of Stewart v. Welsh, 142 Tex. 314, 178 S.W.2d 506 (1944), the Supreme Court in requiring removal of a fence by mandatory injunction, quoted with approval the following language from 18 C.J., p. 403, § 468, under the heading "Waiver or Abandonment": " * * * 'But where violations have not been permitted to such an extent as to evidence an abandonment of the plan, a grantee will not be prevented from objecting to further violations by the fact that he has not objected to previous violations by others, particularly where such

violations do not immediately affect the enjoyment of his own premises, or where they were trivial in character as compared with those complained of.' "

In 26 C.J.S. Deeds, § 169, p. 1162, under the heading, "Release, Waiver, Estoppel, or Abandonment", it is stated: "Mere acquiescence has been held not to constitute abandonment as long as a restriction remains of any value; and those entitled to enforce a restriction, in so far as they are not affected by the principles of estoppel or waiver, are entitled to relief even though there may have been some relaxation, as long as there still remains something of value to them." We find no basis for estoppel or waiver in the instant case. See also Barham v. Reames, 366 S.W. 2d 257 (Fort Worth Tex.Civ.App., 1963, no writ hist.); Western Management Corporation v. High Crest Realty Company, 331 S.W.2d 365 (Fort Worth Tex.Civ.App., 1960, writ ref.).

In Faubian v. Busch, 240 S.W.2d 361, 367 (Amarillo Tex.Civ.App., 1951, ref., n. r. e.), cited in the Western Management Corporation v. High Crest Realty Company case, supra, it was stated, "Appellees contend that the termination of the restrictions would only affect their four lots. Such contentions have been previously made in similar cases but the courts have concluded that such a contention is not logically sound for the reason that lots adjacent to those upon which restrictions had been violated would suffer first and be affected most. Under such circumstances, the adjacent owner could with propriety likewise violate the restrictions, then the one next to him would in equity have an equal right; and so on throughout the whole Addition. By such process of reasoning the entire purpose and intention originally expressed to create a restricted residential district could be thwarted and all property owners who did not desire to accept the changed situation and convert their homes into business property would be penalized without fault on their part. It is our opinion that equity in such a situation is with the property owners who desire that their home district be confined to its original purpose, and that equity is not with one or two or a few who seek to violate those conditions because they happen to own the particular piece of property which was most affected by changed conditions. In considering such matters it has been held that the best interest of the property owners generally within the restricted area should be considered and not the best interest of only one or two or even a few property owners. It has also been held in such cases that changed conditions outside of the restricted area must not be permitted to terminate the restrictions within the restricted area when such would cause property owners within the restricted areas to suffer damages. Bethea v. Lockhart, Tex.Civ.App., 127 S.W.2d 1029, and Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275." See also Hooper v. Lottman, 171 S.W. 270 (El Paso Tex.Civ.App., 1914, no writ hist.); Hemphill v. Cayce, 197 S.W.2d 137 (Fort Worth Tex.Civ.App., 1946, no writ hist.); Arrington v. Cleveland, 242 S.W.2d 400 (Fort Worth Tex.Civ.App., 1951, writ ref.); Walker v. Dorris, 206 S.W.2d 620 (Fort Worth Tex.Civ.App., 1947, ref., n. r. e.).

The Ridglea Hills Addition is one of the finest and most exclusive residential areas in Fort Worth. It is presently comprised of over 460 lots. It has a remarkable history as a residential area. Under this record there have been no business houses or business operations in the area nor have there been any apartment houses, duplexes or other multiple family occupancy in the area. To date the single family restrictions have not been violated in any way.

The record further reflects that a majority of the residents of the Addition, including the appellants, have openly and continuously objected to apartment usage in the Addition and that such objections were known to the appellees. In March of 1960

Mrs. Tilley mailed a letter to all of the owners of the Addition in which she detailed the history of the ownership and the plans for developing lots 8, 9 and 10 in Block 47. There was some evidence to the effect that signs had been placed on the property as to its intended use but they were removed. In May of 1965, the appellees instituted a class suit seeking the same relief the appellants now seek. The appellees in their suit alleged that certain owners in the Addition, including Williams, "* * have contended and continue to contend that the construction of apartments on said property is prohibited; that any and all restrictions relating to residences in the Ridglea Hills Addition are applicable to apartment buildings, if such be built on said property; and that no building, whether apartment or residential, can be built within 30 feet of any dedicated roadway which adjoins said property. Said persons are clouding the title to said property and are threatening to litigate these questions."

Thus, appellees' knowledge of the continued opposition of appellants to the proposed apartment usage was confirmed. After the issues in appellees' suit were joined, they took a non suit and appellants immediately filed this suit.

We are unable to find any acts or omissions on the part of the appellants which were relied upon in any material respect by the appellees which would invoke the doctrine of estoppel or which would constitute waiver or laches on their part.

The defense of laches requires proof that the appellants' delay in filing suit produced an injury or damage to the appellees. Arrington v. Cleveland, supra. We are unable to find such proof.

See 22 Tex.Jur.2d beginning at p. 668, § 8, setting forth the elements of estoppel none of which have any application to the facts revealed by this record.

For the reasons stated the cause is reversed and rendered in favor of appellants.