R. N. SMITH et al., Petitioners,

v.

Donald E. WILLIAMS et al., Respondents.

No. B–95.

Supreme Court of Texas.

Nov. 22, 1967.

Rehearing Denied Dec. 20, 1967.

Stone, Tilley, Parker, Snakard, Law & Brown, Thomas H. Law, Fort Worth, Hart & Hart, James P. Hart, Austin, for petitioners.

Simon & Simon, Richard U. Simon, Fort Worth, for respondents.

WALKER, Justice.

This is an action under the Uniform Declaratory Judgments Act[1] to obtain a judgment declaring that single-family residential restrictions imposed by the 1946 Dedication of Ridglea Hills Addition in Fort Worth are still in force and apply to Lots 8, 9 and 10 in Block 47 of a subsequent dedication filed March 16, 1955. After a trial before the court without a jury, judgment was rendered that the plaintiffs take nothing. No findings of fact or conclusions of law were filed or requested. The Court of Civil Appeals reversed and rendered, holding that the property in question is subject to the 1946 restrictions. 409 S.W.2d 572. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

In 1946 real estate developers platted and dedicated as Ridglea Hills Addition a tract of land in the western section of Fort Worth. The dedicators planned, and the plat and dedication provided for, 36 large lots ranging in size from four to five acres

1. Article 2524–1, Vernon's Ann.Tex.Civ.Stat.

each. It was stipulated in the dedication that the land should be held and conveyed subject to certain reservations, restrictions and covenants, some of which are quoted at length in the opinion of the Court of Civil Appeals. These included provisions that some designated lots might be divided into not more than two plots and certain others into not more than three plots, that no lot or plot should ever be used for other than single-family residence purposes, that only one single-family residence would be permitted on any lot or plot, that any residence should have a minimum floor space of 2,000 square feet and cost not less than $15,000.00 based upon costs prevailing at the time of the dedication, and that no structure should ever be erected until the plans were submitted to and approved by the dedicators.

It was further provided that none of the lots or any building thereon should be sold or leased to or used or occupied by any person not of the white race. The dedication also stipulated that the dedicators might include additional restrictions in any contract or deed to the lots or plots, that the restrictions would be referred to, adopted and made a part of every contract and deed executed by the dedicators, would constitute covenants running with the land and be binding upon and enforceable by the dedicators and every person acquiring an interest in any part of the land, and would continue in force for an initial period of 25 years and thereafter for successive periods of 15 years each unless, within five years of the expiration of any period, the same were released by the owners of at least half of the area.

While the record is not clear on the point, it is fair to assume that several lots in the addition were conveyed subject to the restrictions set out in the dedication. Mrs. L. K. Tilley, petitioner, acquired title to Lot No. 2, Block No. 1, in 1946. Before the addition was developed, however, and before any action was taken to construct streets, utilities or houses, the developers concluded that the lots were too large.

According to the testimony, they began to devise ways to redo the addition. In 1953 all persons owning any land in the original addition except Mrs. Tilley executed and filed for record a new plat and dedication embracing Lots 5, 6, 7, 8, 9, and parts of Lots 4, 10, and 11, in Block 4. That portion of the addition was resubdivided into 56 lots located in three blocks, and it was declared that the property would thereafter be known as "Dedication of Blocks 29 to 31 (both inclusive) of Ridglea Hills, being a revision of Lots 5, 6, 7, 8, 9, and portions of Lots 4, 10, and 11, in Block 4 of Ridglea Hills Addition to the City of Fort Worth." The instrument contained detailed restrictions, similar in many respects to those found in the 1946 dedication. A. C. Luther, J. T. Luther, Jr. and Earl Wilson, who owned the particular property covered by this first rededication, were referred to as the Dedicators, and it was provided that:

"The Dedicators declare that the land sought to be sub-divided on the attached plat is held and shall be conveyed subject to the restrictions, reservations and covenants herein set forth.

"Section 1. USE OF LAND. The lots shall be used for private residence purposes only. * * *

\* \* \* \* \* \*

"Section 10. By this dedication it is understood and agreed that all prior restrictions placed on said property shall be amended as shown in this instrument, except that portion of the prior restrictions in respect to the sale of property to other than those of the Caucasian race."

In 1953, prior to filing of the first rededication, Mrs. Tilley and her husband conveyed the south part of Lot No. 2, Block No. 1, of the original addition to A. C. Luther, J. T. Luther, Jr. and Earl Wilson. The grantees in this deed then owned parts of Ridglea Hills, and J. T. Luther, Jr. testified that they were authorized to and did represent the other owners in the transaction.

By the terms of the deed, the grantors waived all restrictions placed on all property by the 1946 dedication, and it was further stipulated that none of such restrictions should apply to or be enforceable against the portion of Lot No. 2 retained by Mrs. Tilley, which is the property involved in the present suit. The deed also provided that the original dedicators of Ridglea Hills, their heirs or assigns, would agree in writing to the waiver and elimination of the restrictions on Mrs. Tilley's property. In a separate letter agreement, executed and delivered to Mrs. Tilley as part of the same transaction, Wilson and the Luthers promised to furnish a waiver of the 1946 restrictions on the property reserved by her so the same might be sold or used for the construction of apartments. The letter and deed were filed for record at the same time as the first rededication. Mrs. Tilley's property was rezoned for apartments by the City Council of Fort Worth in 1953. The amendment to the zoning ordinance was placed of record, but no apartment houses have been constructed anywhere in the area covered by the 1946 dedication.

The other owners of property located in Ridglea Hills did not execute a formal waiver of the restrictions. During the two-year period from 1953 to 1955, however, six additional rededications, referred to herein as the second to the seventh, inclusive, were filed for record. Each of them was executed by all the owners of the property covered thereby. The first, second, third and sixth rededications each covered a separate part, and together covered all, of the original addition. The fourth, fifth and seventh rededications dealt with certain portions of the area replatted in connection with the second rededication. Aside from the use restrictions mentioned below, each of the seven rededications followed the same general plan, subdividing the particular area covered thereby into lots generally about 100 feet wide and approximately 150 feet deep and specifying in detail the restrictions applicable thereto. By 1955 then all of the land originally dedicated in 1946 had been replatted and resubdivided.

Each of the rededications except the second and sixth provides that the property shall be used only for private residence purposes, and that all houses shall be designed for single-family occupancy. The second rededication authorized the use of Blocks 44, 45 and 56 for either single-family dwellings or multiple apartment units. This was changed by the fourth rededication, filed some two weeks later, which provides that the lots in such blocks may be used only for single-family residences. The sixth rededication is dated March 16, 1955, and stipulates that the lots in Block 47, which include the property involved in this case, may be used for either residential or apartment purposes. It imposes a single-family residence restriction on all of the other lots in that particular subdivision.

Two of the plaintiffs in the present suit own lots in the sixth resubdivision, one owns a lot in the third resubdivision, and two own lots covered by the second and seventh rededications. In each of their deeds the property is described by reference to the applicable rededication and not by reference to the 1946 dedication. There being no evidence to the contrary, the trial court could reasonably infer that all lots in each rededicated area were so conveyed after the filing of the particular rededication.

About 200 lots in the areas covered by the first, second and third rededications were acquired by some 144 different owners before the sixth rededication was executed and filed for record in 1955. None of these owners joined in the sixth rededication, and the plaintiffs contend that the provision therein for the construction of apartments on the lots in Block 47 is ineffectual because: (1) the residential restrictions imposed by the 1946 dedication could not be released except by concurrence of the owners of all property covered by such dedication; (2) there has been no such

violation of the restriction as would constitute a waiver or preclude its enforcement by a court of equity; and (3) the attempted release of the restriction in the sixth rededication is contrary to the provisions of the 1946 dedication concerning the duration of restrictions and the persons who might release the same.

We recognize the general rule that some of the owners of property in a restricted subdivision may not release or modify applicable restrictions without the concurrence of others who own property in the subdivision. See Farmer v. Thompson, Tex.Civ.App., 289 S.W.2d 351 (wr. ref. n. r. e.). It also is clear that there has been no violation of the type that ordinarily gives rise to waiver of a residential restriction or precludes its enforcement by a court of equity. See Stewart v. Welsh, 142 Tex. 314, 178 S.W.2d 506; Barham v. Reames, Tex.Civ.App., 366 S.W.2d 257 (no writ); Faubian v. Busch, Tex.Civ.App., 240 S.W. 2d 361 (wr. ref. n. r. e.); Walker v. Dorris, Tex.Civ.App., 206 S.W.2d 620 (wr. ref. n. r. e.); Hemphill v. Cayce, Tex.Civ.App., 197 S.W.2d 137 (no writ); Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275 (wr. ref. w. m.). Our problem is to determine whether, as contended by Mrs. Tilley, the 1946 dedication has been replaced by the several rededications.

In considering this question, we put aside the testimony of J. T. Luther, Jr. that he and the other owners of Ridglea Hills intended to abandon the 1946 dedication. Their secret intention in this respect would not deprive subsequent purchasers of the right to enforce the restrictions. The purchasers of lots in the various subdivisions are charged with knowledge, however, of the terms of the 1946 dedication and of the rededication applicable to their particular property. They thus are deemed to have known that the area in which they were buying had been rededicated and was being sold by the owners thereof under a plan that was at substantial variance with the original scheme for the development of

Ridglea Hills. This was enough to suggest that the 1946 dedication had no application to their property and that the portion of Ridglea Hills in which their lots lay was being developed as a separate unit. While the owners of part of the addition could not bind the remaining owners by releasing the restrictions, they could waive for themselves and their property the right to enforce the restrictions against other property in the subdivision.

Each replatting and rededication was complete in itself. Each refers to the owners of the property there resubdivided as "dedicators" and declares that such property is "held and shall be conveyed subject to the restrictions, reservations and covenants herein set forth." Each then sets out fully the uses and restrictions applicable to the particular land and contains detailed provisions concerning the duration of the restrictions and the right to enforce same. The provisions of the 1946 dedication that certain lots might be divided into not more than two plots, certain others into not more than three plots, and that only one single-family residence would be permitted on any lot or plot were completely nullified. Where it was originally planned that the area covered by Ridglea Hills would be used for not more than 66 houses costing at least $15,000.00 and constructed on large estate-sized lots, the rededications permitted the land to be used as building sites for 460 houses. Approval of plans by the dedicators was required, but the minimum cost requirement was abandoned. Streets and roads were closed and the bridle path was eliminated. New streets were dedicated; setback lines, building lines and easements were changed or abandoned.

Although some of the rededications state that all prior restrictions are amended as therein set out, we agree with the trial court that "amended" was not used as a word of art. The original dedication was completely emasculated and could not survive if the rededications were to be valid. It is true that the single-family residence require-

ment was carried forward in five of the rededications, but the very nature of this restriction was radically changed. Each lot that originally could be used for not more than three houses was, on the average, divided into almost thirteen lots with a house to be erected on each. This is a substantial departure from the original plan, differing only in degree from the change effected by the authorization of apartments on certain lots in the second and sixth rededications.

We do not have a case then of mere replatting, or an attempt to modify restrictions, by some of the owners of a restricted subdivision. Cf. Western Management Corp. v. High Crest Realty Co., Tex.Civ. App., 331 S.W.2d 365 (wr. ref.); Norwood v. Davis, Tex.Civ.App., 345 S.W.2d 944 (no writ). The owners of all property in Ridglea Hills have resubdivided and rededicated the land owned by them in a manner that could not be valid if the original dedication were still in force. Most or perhaps all of the lots have been sold and houses have been erected on many of them, but all such sales were made and the entire addition was developed on the basis of the rededications rather than the 1946 dedication. It does not appear that any part of Ridglea Hills was conveyed, improved or held for improvement as contemplated by the original dedication after the first rededication was filed in 1953. In view of these circumstances, it is reasonable to conclude that those who executed each rededication intended to abandon the 1946 dedication as to the property then rededicated and to waive any right to enforce its restrictions (other than the one prohibiting sales to persons not of a Caucasian race [2]), for the benefit of such property, against other parts of Ridglea Hills. They evidently determined to develop the addition in successive stages, with each unit governed by the restrictions set out in the applicable rededication. Since these issues are deemed to

have been resolved by the trial court in Mrs. Tilley's favor, neither the parties who signed a particular rededication nor their successors in title are in position to say that the original dedication is still in force. The 1946 dedication has thus been completely nullified and supplanted by the rededications, and its provisions may not be enforced against any of the lots or their owners.

The judgment of the Court of Civil Appeals is accordingly reversed and that of the trial court is affirmed.

---

2. As to the enforceability of this restriction, see Shelley v. Kraemer, 334

U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441